IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MICHAEL POSTAR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. _____ |
| | § | |
| DAVID POSTAR, | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Michael Postar ("Plaintiff" or "Michael"), files this Original Complaint against Defendant, David Postar ("Defendant" or "David"), and respectfully shows as follows:

### I.    PARTIES

1.    Plaintiff, Michael Postar, is an individual and citizen of the State of Texas.

2.    Defendant, David Postar, is an individual and citizen of the State of Texas and may be served with process at Gargoyle Management, Inc., 5625 CR 7410, Lubbock, Texas 79424, or wherever he may be found.

### II.    JURISDICTION AND VENUE

3.     This Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1331 because Plaintiff brings causes of action under the Lanham Act. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because Plaintiff's state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, with such supplemental jurisdiction including claims that involve the joinder of additional parties.

4.      Venue is proper in the District Court for the Northern District of Texas, Lubbock Division, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

## III.    FACTUAL BACKGROUND

5.      The parties were once joint owners of a vast number of self-storage facilities located across the Texas Panhandle and West Texas (the "storage business"). Michael started the storage business. Over time, Michael invited David to join him in the storage business. Due to Michael's leadership, hard work, and constant innovation and creativity, the storage business expanded exponentially. Michael and David developed storage facilities in Lubbock County, Midland County, and Tom Green County, in Texas.

6.      In late 2016 and early 2017, trademark applications related to the jointly held storage facilities were filed with the United States Patent and Trademark Office. About this time, Michael and David started working to split the jointly owned businesses.

7.      On May 31, 2017, the pending trademark applications were assigned to Michael R. Postar, Inc. Thereafter, the trademarks were registered.

8.      On May 31, 2017, David filed an Original Petition for Receivership in Cause No. 2017525791, alleging deadlock on the division of the joint assets of David and Michael.

9.      Shortly thereafter, on August 24 and August 25, 2017, Michael and David participated in mediation before mediator Chris Nolland. At mediation, the jointly held entities were split either by agreement or through a draft. Ex. A, Rule 11 Mediated Settlement Agreement (Rule 11 MSA).

10.     On January 25, 2018, because of the mediation and the Rule 11 MSA, the Original Petition for Receivership filed in Cause No. 2017-525791 by David was nonsuited without prejudice.

11.     On March 13, 2018, as a part of the settlement between Michael and David, Postar IP, LLC was formed to hold the Registered Marks.

12.     On March 13, 2018, the Registered Marks held by Michael R. Postar, Inc. were assigned to Postar IP, LLC.

13.     On April 24, 2018, before the ink was hardly dry on the Rule 11 MSA, David and his entity Gargoyle Management, Inc. sent a cease and desist letter to Michael R. Postar and his entity Michael R. Postar, Inc. related to the use of a mark that David attempted to register that incorporated aspects of the Registered Marks, which consisted of a smiley face with arms and legs (Smiley Guy).

14.     On May 7, 2018, Michael responded to the April 24, 2018, cease and desist letter, defending his rights to Smiley Guy and making allegations against David and his entity related to the use of a mark consisting of a box with arms and legs (Box Guy) that was confusingly similar to Smiley Guy, and demanded that David cease and desist use of the Box Guy mark.

15.     On May 21, 2018, Michael provided additional evidence against David's efforts to federally register Smiley Guy.

16.     On or about July 12, 2018, under paragraph 29 of the Rule 11 MSA, the issues related to Smiley Guy and Box Guy were submitted to Chris Nolland for their first arbitration.

17.     On October 3 and October 4, 2018, arbitration was conducted before Chris Nolland in Lubbock, Texas.

18.     On November 29, 2018, before the ruling on the arbitration held in October 2018 was received, evidence of David's breach of the Rule 11 MSA was again found and presented to David's counsel. David was causing internet traffic to go from Michael's internet website domains for Affordable Storage and A-Plus Storage to David's internet website domains.

19.     On December 11, 2018, Chris Nolland signed an Arbitration Award related to Smiley Guy and Box Guy, among other issues that had been submitted in the first arbitration in October 2018. Ex. B, Arbitration Award.

20.     About four years later, on May 3, 2022, Michael sent a cease and desist letter to David related to registration of previously undisclosed internet website domain names that David created on the eve of the August 2017 mediation, specifically "aplusstoragelubbock.com" and "discountstoragelubbock.com," and David's failure to rewrap or repaint trucks/SUVs and other vehicles as required by the Rule 11 MSA.

21.     On November 14, 2022, a mediation by Christopher Nolland was held to address Michael's claims against David, and David's complaints made subsequently against Michael related to The Dirt Pit, Inc. (a jointly-owned business) and the use of the Affordable Storage tradename outside the parties' contractually-designated exclusive areas. The issues were not resolved at mediation because the parties could not reach an agreement.

22.     On November 17, 2022, Michael submitted his claims for a second arbitration before Chris Nolland. Notably, David did not submit any claims in this second arbitration proceeding.

23.     On February 6, 2023, the second arbitration hearing was held before Chris Nolland via Zoom.

24.     On March 3, 2023, Chris Nolland issued an Arbitration Award, finding that David breached the Rule 11 MSA and violated Michael's rights thereunder. Ex. C, March 3, 2023, Arbitration Award. David was required to assign the domain "aplusstoragelubbock.com" to Michael. *Id*. Further, David was required to not "purposely and regularly use the Affordable Storage mark or iterations thereof on any trucks/SUVS or other vehicles located physically in Lubbock County and should not use the word Lubbock in combination with the Affordable mark or iterations thereof on any trucks/SUVS or other vehicles located anywhere" and "should rewrap or repaint trucks/SUVS or other vehicles accordingly." *Id*. Michael was awarded attorneys' fees and expenses in the amount of $4,000.00. *Id*.

25.     On August 18, 2023, counsel for Michael and David had a Zoom conference with arbitrator Chris Nolland regarding the agenda for an upcoming meeting of Postar IP, LLC, the entity that is jointly owned 50% each by the brothers, and which owns the Registered Marks. Under the Company Agreement of Postar IP, LLC, arbitrator Chris Nolland was to break any tie votes between the brothers.

26.     On August 23, 2023, less than 6 months after the March 3, 2023 Arbitration Award, and after learning that David had created competing and confusingly similar derivative marks based on the Registered Marks, Michael complained of David's unauthorized derivations of the Registered Marks to Chris Nolland for a third arbitration proceeding.

27.     Michael and David are in the business of operating commercial self-storage unit facilities. Michael and David each own fifty percent (50%) of Postar IP, LLC. By virtue of the Company Agreement of Postar IP, LLC, Michael has the exclusive right to use the trademarks at issue in Lubbock County, Texas. David has the exclusive right to use the trademarks at issue in Tom Green County, Texas, and Midland County, Texas.

28.     The Company Agreement of Postar IP, LLC contains the agreement between Michael and David that Michael has the exclusive right to use the federally registered trademarks "Affordable Storage Logo"[1] and "Crown Logo"[2] with "Smiley-Guy" (the "Registered Marks") in Lubbock County, Texas. The Registered Marks are owned by Postar IP, LLC.

29.     The Company Agreement also states that, apart from Lubbock, Tom Green, and Midland Counties in Texas, Michael and David have the unfettered right to equally and exclusively use those trademarks anywhere else in the world. Chris Nolland's December 2018 Arbitration Award  expressly precludes, David or Michael from sub-licensing their use of the rights to Registered Marks owned by Postar IP, LLC. *See* Ex. B at p. 11, ¶ 21.

30.     The trademarks and logos are inherently distinctive, as they neither serve as a name for the services themselves nor describe any quality, characteristic, or ingredient of the services.

31.     Michael developed and has for years used and promoted the Registered Marks in operating and marketing his storage facilities in Lubbock County. As a result of extensive use and promotion of the Registered Marks, they have acquired a favorable reputation to consumers as an identifier and symbol of Michael's products, services, and goodwill in Lubbock County, Texas. Accordingly, the Registered Marks are strong and are entitled to broad protection. In fact, they have been deemed incontestable by the United States Patent and Trademark Office.

32.     Michael has a common law and contractual interest in, and exclusive right to use the Registered Marks for his Affordable Storage stores in Lubbock County, Texas. The registrations for the Registered Marks are valid and subsisting.

---

[1] U.S. Trademark Registration No. 5404615 on the Principal Register, *see* Exhibit D herein.

[2] U.S. Trademark Registration No. 5404616 on the Principal Register, *see* Exhibit E herein.

33.     Michael continues to invest substantial sums of money and other resources in promoting his products and services offered under the Registered Marks in Lubbock County, Texas.

34.     On or around August 2023, Michael became aware that sometime in 2023, David began using derivations of Registered Marks belonging to Postar IP, LLC (hereafter Postar IP), bearing the Affordable Storage mark with a smiley face, as shown below:







35.     Accordingly, Michael served a third demand for arbitration upon David's attorney and a copy on arbitrator Nolland, on August 23, 2023.  After several Zoom calls with counsel for the parties and with Mr. Nolland, Mr. Nolland signed an Order setting a final arbitration hearing to commence on August 26, 2024.

36.     Postar IP has valid and legally protectable marks, which it owns, and David's derivation of the marks and their use to identify goods or services causes a likelihood of confusion. 15 U.S.C. § 1114; see also *A&H Sportwear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3rd Cir. 2000); *Springboards to Educ. Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174 (5th Cir. 2023). Further, David's use of the derivative marks is likely to cause confusion as to the affiliation,

connection, or association of the mark or its origin or sponsorship. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005); see also 15 U.S.C. § 1125(a)(1)(A); *Schlotzsky's, Ltd. v. Sterling Purchasing and Nat. Distrib. Co., Inc.*, 520 F.3d 393 (5th Cir. 2008).

37.     Michael asserts that the derivations dilute the Registered Marks owned by Postar IP. Dilution consists of two principal harms, blurring and tarnishment. Blurring occurs when the distinctiveness of the mark is impaired by association with another similar mark or trade name. 15 U.S.C. § 1125(c)(2)(B). Tarnishment occurs when the reputation of a mark is harmed through association with another similar mark or trade name. 15 U.S.C. § 1125(c)(2)(C).

38.     Further, David's use of the derivative marks is an unauthorized use of the Registered Marks. The derivative marks may lead to confusion, deception, or a misunderstanding about the companies represented by the Registered Marks. The derivative marks constitute trademark infringement of the Registered Marks.

39.     On August 9, 2023, Michael noticed a meeting of the members of Postar IP, LLC for August 25, 2023, to address (1) Gavin Hyland and Slaton Affordable Storage, Inc.'s unlicensed use of the Registered Trademarks held by Postar IP, LLC in Terry and Lubbock Counties, Texas, and (2) David Postar's unauthorized derivations and use of the Registered Marks held by Postar IP, LLC.

40.     On May 6, 2024, Michael learned that David, through his entity Gargoyle Management, Inc. ("Gargoyle"), entered into a separate, *perpetual* license agreement with Gavin Hyland beginning on August 26, 2021 to market and use a derivation of the Registered Marks owned by Postar IP, attached hereto as Exhibit F.

41.     Furthermore, David has renewed illegal parking and use of trucks/SUVs and other vehicles in Lubbock County, Texas, Michael's exclusive territory for use of the Affordable Storage

brand, which bore unauthorized derivations of the Affordable Storage mark. Specifically, trailers bearing the unauthorized derivations of the mark have been seen parked at the Gargoyle offices in Lubbock, Texas, at a separate Lubbock business, which is open to the public, and being pulled on Lubbock streets by a Discount Storage-branded truck.

## VI.    CAUSES OF ACTION

### COUNT 1 – TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

42.     Michael hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

43.     As 50% owner of Postar IP, Michael has standing to assert claims against David for infringement of Postar IP's Registered Marks. He also has standing to bring claims to protect his individual rights pertaining to the Registered Marks. Postar IP has valid and legally protectable marks, which it owns, and David's derivation of the marks and its use to identify goods or services causes a likelihood of confusion. 15 U.S.C. § 1114; *see also A&H Sportwear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3rd Cir. 2000); *Springboards to Educ. Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174 (5th Cir. 2023).

44.     David's use of the derivations of marks owned by Postar IP is likely to cause confusion as to the affiliation, connection, or association of the mark or its origin or sponsorship. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005); *see also* 15 U.S.C. § 1125(a)(1)(A); *Schlotzsky's Ltd. v. Sterling Purchasing and Nat. Distrib. Co., Inc.*, 520 F.3d 393 (5th Cir. 2008).

45.     David's use of the derivations also dilutes the Registered Marks owned by Postar IP. Dilution consists of two principal harms, blurring and tarnishment. Blurring occurs when the distinctiveness of the mark is impaired by association with another similar mark or trade name. 15

U.S.C. § 1125(c)(2)(B). Tarnishment occurs when the reputation of a mark is harmed through association with another similar mark or trade name. *Id.* § 1125(c)(2)(C).

46.     Further, David's use of the derivative marks is an unauthorized use of the Registered Marks. The derivative marks may lead to confusion, deception, or a misunderstanding about the companies represented by the Registered Marks. The derivative marks constitute trademark infringement of the Registered Marks.

47.     David's actions, as described above, constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. §1114(1), for which Michael has been legally damaged.

## COUNT 2 – BREACH OF FIDUCIARY DUTY TO POSTAR IP, LLC

48.     Michael hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

49.     Under Texas law, David owes Postar IP fiduciary duties. *See Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800, at *6 (Tex. App.—Dallas July 18, 2018) (affirming the trial court's determination that a 50% member of a two-member LLC owed fiduciary duties to the LLC as a matter of law and, because it was a two-member LLC, owed those duties directly to the other member as a matter of law). Such duties include a duty of good faith and a duty of loyalty. Members are prohibited from personally benefiting from their relationship with the LLC without the LLC's full knowledge and consent. *See Caldwell*, 2018 WL 3454800, at *8; *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963) (explaining that the duty of loyalty requires "extreme measure of candor, unselfishness, and good faith[,]" and, as fiduciaries, [members] are "under obligation not to usurp corporate opportunities for personal gain," and must dedicate "uncorrupted business judgment for the sole benefit of the corporation").

50.     David breached his duty of loyalty as it relates to preserving the assets of Postar IP by creating and using a derivation of a mark owned by Postar IP. Further, David breached his duty of good faith by allowing his personal interests to prevail over the interests of Postar IP. Specifically, David has personally benefitted from his self-dealing through the use and licensing of the derivative mark. David took this action without the full knowledge and consent of Postar IP. He also breached his fiduciary duty by executing a perpetual license for Gavin Hyland, an employee of his, to use the Registered Marks or derivations thereof, in express contradiction to the December 2018 Arbitration Award issued by Chris Nolland, which bans the license of Postar IP's intellectual property to third parties. David, through his Gargoyle entity, executed his license with Mr. Hyland without Michael's knowledge or consent, and as such without the consent of Postar IP.

51.     David's actions, as described above, constitute a breach of fiduciary duty pursuant to 29 U.S.C. § 1109, for which Michael has been legally damaged.

## COUNT 3 – DAVID POSTAR'S REPEATED BREACH OF THE RULE 11 MSA AND COMPANY AGREEMENT OF POSTAR IP, LLC

52.     Michael hereby incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

53.     In Nolland's March 3, 2023 Arbitration Award, David was directed to rewrap his vehicles and to avoid keeping his vehicles in Lubbock County for any period of time branded with the Affordable Storage identifying his territories and with contact information for his territories. Nolland's ruling was clear: David is directed to not purposely and regularly use the Affordable Storage mark (or derivations or iterations thereof) on any trucks/SUVs or other vehicles typically located physically in Lubbock County . . . and should "rewrap" or repaint his trucks/SUVs or other vehicles accordingly.

54.     David has violated that order with impunity by combining the use of unauthorized derivations of Registered Trademarks owned by Postar IP with renewed illegal parking and use of trucks/SUVs and other vehicles in Lubbock County.

55.     David's behavior breaches the Rule 11 MSA, the Company Agreement of Postar IP, and Nolland's prior Arbitration Awards, violates Michael's exclusive rights to use the Affordable Storage brand in Lubbock County, and damages Michael by virtue of diverted sales to David's stores, and through customer confusion in the marketplace.

56.     Therefore, a significant penalty is required to stop such behavior once and for all, and properly punish David for his flagrant breaches of the agreements between him and Michael, and Nolland's rulings interpreting those agreements.

## COUNT 4 – DECLARATORY JUDGMENT

57.     Michael hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

58.     Michael asserts a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 and the Uniform Declaratory Judgments Act, Chapter 37, Texas Civil Practice and Remedies Code.

59.     Michael seeks a declaratory judgment that David's creation, use, and licensing of derivative marks is an unauthorized use of the Registered Marks owned by Postar IP, which may lead to confusion, deception, or a misunderstanding about the companies represented by the Registered Marks and constitute trademark infringement of the Registered Marks and is a breach of David's fiduciary duties to Postar IP.

60.     Michael seeks a declaratory judgment that David's renewed illegal parking and use of the Affordable Storage mark (or derivations or iterations thereof) on any trucks/SUVs or other

vehicles in Lubbock County violates Michael's exclusive rights to use the Affordable Storage brand in Lubbock County.

61.     Further, Michael seeks a declaratory judgment that David breached his fiduciary duties to Postar IP when he created and used unauthorized derivations or iterations of the Registered Marks owned by Postar IP, and then licensed such unauthorized derivations or iterations to a third party, and when he executed a perpetual license in favor of Gavin Hyland to use Postar IP's intellectual property.

62.     An actual justiciable case or controversy exists between Michael and David regarding David's creation, use, and licensing of derivative marks, the parties' rights under the Rule 11 MSA and the Company Agreement, their rights to use the Registered Marks in exclusive geographic locations, and the procedure for addressing deadlock under the Company Agreement.

63.     Michael will suffer financial and irreparable damage if there is no declaratory relief awarded, because David continues to park and use the Affordable Storage mark (or unauthorized derivations thereof) on trucks/SUVs or other vehicles in Lubbock County without any legal authority to do so and continues to create confusion in the marketplace as to who actually operates Affordable Storage in Lubbock County.

64.     David's continued use of the Affordable Storage mark (or unauthorized derivations thereof), including the unauthorized licensing of the derivative mark, deprives Michael of his legal right to exclusively use the Affordable Storage brand in Lubbock County and dilutes the Registered Marks owned by Postar IP and is a breach of David's fiduciary duties to Postar IP.

65.     In the third arbitration between the parties, again to be presided over by Christopher Nolland, David asserted the following claims against Michael: demand for accounting and distribution as to the jointly owned Dirt Pit entity; demand for indemnification as to the Dirt Pit

entity; breach of fiduciary duty as to the Dirt Pit entity; unauthorized derivations of Registered Marks owned by Postar IP; a request for geographic restrictions and/or guidelines for the use of the Registered Marks owned by Poster IP; and request for declaratory judgment.

66.     However, on July 2, 2024, at David's behest, Mr. Nolland recused himself as arbitrator for all current and future disputes between Michael and David. *See* Ex. G. The Rule 11 MSA, the Postar IP, LLC Company Agreement, and the Dirt Pit, Inc. Agreement encompassed a contractual agreement between the parties for Chris Nolland to serve as the arbitrator and decision-maker of all disputes as between Michael and David. Since Mr. Nolland has recused himself, at David's behest, and is no longer serving in this historical role, there is no longer an agreement to arbitrate between the parties. Without Chris Nolland, there is no agreement to arbitrate. Thus, Michael seeks relief from this Court to vindicate his rights.

67.     Michael seeks a declaratory judgment as to David's claims as set forth above as follows:

a.     That Michael has not breached any fiduciary duty vis-à-vis the Dirt Pit, Inc.;

b.     That no accounting is required of Michael to David, as he never received any remuneration or thing of value, contrary to David's claims;

c.     That Michael is not obligated to provide any indemnification to David related to the Dirt Pit, Inc., and no claim has been made against that entity or against David by any third party, contrary to David's claims;

d.     That Michael has not engaged in trademark infringement, dilution, or tarnishment of any of the Registered Marks, and that a tag line of simply adding Michael Postar's name to the Affordable Storage Registered Mark is not a dilution or infringement upon the Registered Marks, and in fact, acts

as a clarifying designation of origin, since both Michael and David are allowed to use the Registered Marks in most places in the world simultaneously under the Rule 11 MSA and the Postar IP, LLC Company Agreement;

e.    That neither Christopher Nolland, as prior arbitrator, nor this Court, nor any other Court, has the power under Texas contract law to re-write the parties' contractual agreements as to the territories assigned between the parties as to use of the Registered Marks. The parties twice have agreed to a territorial division for use of the Registered Marks (in the Rule 11 MSA and the Company Agreement); and

f.    That David's request for declaratory relief be denied in its entirety.

68.    Michael has been legally injured and will continue to be injured and damaged without the declaratory relief sought herein.

## REQUEST FOR PERMANENT INJUNCTION

69.    Michael incorporates by reference the preceding paragraphs.

70.    David's continued parking and use of the Affordable Storage mark (or unauthorized derivations or iterations thereof) on trucks/SUVs or other vehicles in Lubbock County has caused Michael irreparable injury by violating his exclusive contractual rights to use the Affordable Storage mark in Lubbock County.

71.    Michael's injury cannot be adequately compensated by any available remedies at law, such as monetary damages, because of David's financial resources such that a monetary penalty would not deter continued violations from occurring.

72.     Because of David's repeated and egregious violations of Nolland's prior Arbitration Awards, a permanent injunction is proper to ensure the violations cease and that David, individually, and through his entities be permanently enjoined from parking trucks/SUVs or other vehicles which depict the Affordable Storage Registered Marks (or derivations or iterations thereof) in Lubbock County, and from all use of the Affordable Storage mark (or derivations or iterations thereof) in Lubbock County, and that David be enjoined from licensing any of the Registered Marks and any derivation thereof to any third party.

73.     Michael asks the Court to set its request for a permanent injunction for a hearing on the merits and, after the hearing, issue a permanent injunction against David.

## VII.   DAMAGES

74.     As a direct and proximate result of David's conduct, Michael suffered and pleads for the following damages:

    a.      Actual damages;

    b.      Punitive damages;

    c.      Lost profits;

    d.      Disgorgement of David's profits; and

    e.      Reasonable royalties.

75.     David's use of derivations of the Registered Marks and licensing of the derivations of the Registered Marks to third parties has unjustly enriched David at the expense of Michael's reputation and goodwill in Lubbock County, Texas.

## VIII.   ATTORNEYS' FEES AND COSTS

76.     This is an exceptional case, and Michael is entitled to an award of attorneys' fees under 15 U.S.C. § 1117(a). David's creation of and continued use of derivations of the Registered

Marks in Lubbock County and elsewhere has resulted in profits for David, and justifies an award of attorneys' fees and court costs of the action to Michael. *See Spectrum Ass'n Mgmt. of Texas, L.L.C. v. Lifetime HOA Mgmt. L.L.C.*, 5 F.4th 560, 566–67 (5th Cir. 2021) (finding award of attorneys' fees justified where defendant "maliciously, fraudulently, deliberately, or willfully infringes the plaintiff's mark"). Michael is also entitled to an award of his reasonable and necessary attorneys' fees under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, the Texas Civil Practice and Remedies Code § 38.001, and the Texas Civil Practice and Remedies Code § 37.009.

## IX.   PRAYER

77. For these reasons, Michael asks that David be cited to appear and answer and, on final hearing, that Michael be awarded a judgment against David for the following:

a. That the Court order that David, individually, and through his entities, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them be prevented from using the derivative marks, or alternatively, to require David to transfer the derivative marks to Postar IP;

b. That the Court order that David, individually, and through his entities, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them be permanently enjoined from parking trucks/SUVs or other vehicles which depict the Affordable Storage mark (or derivations or iterations thereof) in Lubbock County, and from all use of the Affordable Storage mark (or derivations or iterations thereof) in Lubbock County;

c.     That the Court declare that David's unauthorized creation and use of derivations of Registered Marks owned by Postar IP violates the Company Agreement and violates Michael's exclusive rights to use the Affordable Storage brand in Lubbock County and that Michael has been injured as a result of David's actions and will continue to be injured without such declaratory relief;

d.     That the Court declare that David breached his fiduciary duties to Postar IP by creating and using a derivation of Registered Marks owned by Postar IP and causing his Gargoyle entity to subsequently license the derivative mark to Gavin Hyland;

e.     That the Court declare that David's illegal parking and use of the Affordable Storage mark (or derivations or iterations thereof) on any trucks/SUVs or other vehicles in Lubbock County violates Michael's exclusive rights to use the Affordable Storage brand in Lubbock County and that Michael has been injured as a result of David's actions and will continue to be injured without such declaratory relief;

f.     That the Court permanently enjoin David from parking trucks/SUVs or other vehicles that depict the Affordable Storage mark (or derivations or iterations thereof) in Lubbock County, and from all use of the Affordable Storage mark (or derivations or iterations thereof) in Lubbock County, and that David be enjoined from licensing any of the Registered Marks owned by Postar IP and any iterations or derivations thereof to any third party;

g.     Declaratory judgment relief as requested above;

h.     Actual damages;

i.     Pre- and post-judgment interest;

j.     Attorneys' fees and costs; and

k.     All other relief to which Michael is entitled.

Respectfully submitted,

By: */s/ Fernando M. Bustos*
    Fernando M. Bustos; SBN: 24001819
    fbustos@bustoslawfirm.com
    Deirdre Kelly Trotter; SBN: 45006069
    dtrotter@bustoslawfirm.com
    Benjamin E. Casey; SBN:  24137943
    bcasey@bustoslawfirm.com
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

ATTORNEYS FOR PLAINTIFF,
MICHAEL POSTAR

## LYNN PINKER COX HURST

JASON DENNIS
*Partner*

D 214 981 3830
F 214 981 3839

jdennis@lynnllp.com

Lynn Pinker Cox & Hurst, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
lynnllp.com

August 24, 2017

VIA E-MAIL
Fernando Bustos
Michael Carper


Re:   *David Postar v. Michael Postar, et al.*;
      Cause No. 2017-525791 in the 72nd Judicial District of
      Lubbock County, Texas

Dear Fernando and Michael,

Pursuant to Rule 11 of the Texas Rules of Civil Procedure, this confirms our agreement whereby:

### Mediation

1.      David Postar and Michael Postar (together, "members") agree to mediate their disputes with Chris Nolland on August 24, and if they do not reach a mutual agreement on the division of their joint-assets, then on August 25, the parties will conduct a draft of the properties.

### The Draft

2.      The order of the draft for the properties shall be determined by a coin flip to be administered by Mr. Nolland with Mr. Nolland deciding who selects heads or tails by whatever method he deems appropriate.  The winner of the coin flip shall have the option of making the first draft selection among the jointly-owned properties and land.

3.      The member that makes the first selection in the draft shall select either a facility or land from Exhibit 1.  To compensate, the member that makes the second selection in the draft shall also make the

EXHIBIT
A

Fernando Bustos
Michael Carper
August 24, 2017
Page 2

third selection.  After the third selection, the members shall alternate picks (e.g., if Michael picks first, then he will get the 1st pick, 4th pick, 6th pick, etc., while David would select the 2nd pick, 3rd pick, 5th pick, etc.).

4.    Each member has fifteen (15) minutes to make their selection. Mr. Nolland shall maintain the clock for picks.  If no pick has been received within the allotted 15 minutes, then the pick is forfeited, and the clock switches to the other member to make his next draft pick.  If a pick is submitted prior to15 minutes expiring, then the 15-minutes will begin to run immediately on the next pick.

5.    A list of the facilities and properties subject to the draft are attached as <u>Exhibit 1</u> to this letter, including their debt.

6.    The parties have agreed that certain individually-owned assets shall not be subject to the draft.  For Michael, these properties include: Shops at 8229 & 8501 Valencia, Storage at 82nd & University Ave., Storage at 10410 Slide Road.  For David, these properties include: Gargoyle Structures Inc.] and [San Angelo Land which in Tract One being an area of 30.016 acres out of A Willeke Survey No. 1.  Michael contends that the A+ Super Storage intellectual property should be his personal property, but David does not agree.  Michael also contends that this property claimed by David is co-owned, and David contends that the property claimed by ~~David~~ Michael is co-owned due to the free construction and other services provided to those entities. *Do Michael disagrees with the last clause of the preceding sentence. fmB*

7.    All cash balances in the various entities shall be totaled as of September 30th, and expenses until September 30 shall be paid pursuant to paragraph 40 in the ordinary course of business.  Cash balances shall include any prepaid rent.  The cash shall be divided equally between David and Michael.  Deposits shall be taken out of Cash and paid to the appropriate facility.

8.    While the entities may include multiple properties, the draft shall be by facility or raw land that the parties jointly purchased.  Each facility will include all of the assets related to it, such as trucks, golf carts,

Fernando Bustos
Michael Carper
August 24, 2017
Page 3

computers, supplies, and working equipment (everything that runs that store), and furniture, original construction plans related to that entity, artwork associated with that facility, and trade out arrangements currently in place for such facility. Mobile Phones, facility phones and numbers go with each facility though each individual shall retain their cell phone numbers. With respect to trucks, each facility shall transfer with the one vehicle (except 132nd Storage, which has 2 vehicles) used by that facility. At closing, all instruments necessary to effect the changes in the title to the vehicles shall be exchanged. Attached hereto as Exhibit 2 is a list of all vehicles to be awarded at Closing by category, i.e. (i) facility, (ii) family, and (iii) trucks to be divided at mediation, which has been revised and is subject to final agreement by both members. The facility trucks will be awarded as set forth on the agreed exhibit. The family trucks will be awarded as set forth in the agreed Exhibit. The "trucks to be divided" will be divided at mediation or by draft if the parties cannot agree, otherwise.

9.      Each facility shall maintain the third-party debt associated with that facility. If more than one facility is owned by an entity, then the debt shall be allocated between the facilities owned by that entity. After the draft, as part of the Closing, each member will be responsible for having the other member removed as a guarantor as well as any other collateral not obtained by that member in the draft.

10.     Debt owed to either member by a facility is set forth on Exhibit 3 attached hereto. David and Michael disagree as to whether these debts to each other, shall be (a) paid out of the Cash referenced in paragraph 7 above or (b) if the member that acquires a facility that owes a debt to him, then that debt shall remain.

11.     All property taxes for the year shall be pre-paid ahead of the Closing Date for each facility or property.

12.     For companies that own multiple facilities, each facility shall be separated with its allocable share of the company's non-store related assets, including retained earnings (set forth on Exhibit 4 attached hereto), depreciation, etc. Following the draft, new entities shall be

Fernando Bustos
Michael Carper
August 24, 2017
Page 4

created for severed facilities at the expense of that entity, and all documents or accounting work necessary to separate the facilities shall be taken prior to or on the Closing Date to accomplish the severance and division of retained earnings, etc., at the expense of the company. This division has been done by Gary Taylor and provided to each member in advance of the draft and attached hereto as <u>Exhibit 4</u>.

13.    The general intent is that once the facility or land has been drafted, the other member shall have no entitlement to any future income or settlement related to eminent domain, etc., nor any obligation related to such.

14.    The 8% and 2% interests owned by Gavin and Patrick shall stay with the facility, and it is up to the drafting member to honor the ownership interests of Gavin and Patrick after the Closing Date pursuant to the corporate documents.  This paragraph does not limit any rights that either Gavin or Patrick may or may not have with respect to their interests.  Two employees currently reside at two of the properties:  Slide Road and 13510 CR 1800.  Whichever member drafts these properties can either allow the employees to continue residing there or give them sixty (60) days to move out plus $1,000 for moving expenses.

15.    Each facility and property shall be drafted as is.

16    Each member shall receive a copy of all of the monthly books for facilities drafted.  The Members do not agree at this time regarding what information a member may maintain with respect to a facility that they do not draft.

17.    Each member shall also receive copies of computer data and documents from electronic storage devices from Gavin's computer or related storage devices.  If the parties cannot agree on these issues, Chris Nolland will resolve them as the arbitrator.

18.    Each member shall receive after the draft: any plans and project folders for all facilities drafted prior to the date of Closing.  At this time, the Members do not agree with respect to a broader exchange of

Fernando Bustos
Michael Carper
August 24, 2017
Page 5

information than above or the details of such exchange, and leave that issue to further negotiation or resolution by Mr. Nolland.

19.    With respect to Lawn mowers, maintenance equipment, tractors and general property, supplies and inventory, set forth on <u>Exhibit 5</u> (not yet received and agreed upon) the parties agree to an equitable division either by agreement at mediation or draft.

20.    The parties agree to negotiate or have resolved by the arbitrator the issue of whether the server located at the Gargoyle office shall be duplicated at the joint expense of the parties and provided to both David and Michael subsequent to Closing.

21.    The parties may trade at mediation, if agreed upon, branded signage that comports with a party's draft selection.

22.    Michael Postar contends that he has personal property on <u>Exhibit 6</u> (~~not yet received or agreed upon~~) that he owned prior to 1999. The Members have no agreement with respect to these yet unidentified claims. *Each member shall have until closing to vacate any storage units or wharehouses not at a facility drafted by that member.*

### Intellectual Property

23.    With respect to all of the intellectual property, including but not limited to logos, marks, etc., as well as all of the websites, domain names, and marketing assets, the members shall agree to ~~to~~ negotiate at mediation which brand each member will use (A+ Super Storage, Affordable Storage, Add-A-Closet, Storage Today), as well as an equitable division of any other intellectual property, training videos, and marketing assets.

24.    If no agreement is reached, on a division of the intellectual property relating to trademarks, service marks, brands, marketing, and internet websites at the mediation, then the properties susceptible to drafting such as brands or domain names shall be determined after the draft. If agreement is not reached within seven days (7) after the draft, then David and Michael agree to empower Mr. Nolland to divide the

Fernando Bustos
Michael Carper
August 24, 2017
Page 6

intellectual property and marketing assets in a fair and equitable manner.  The Members agree that his division shall be binding, non-appealable, and an enforceable final order, if necessary.  The members may, however, by mutual consent and written agreement modify this division prior to the Closing.  At Closing, the members agree to execute any and all documents necessary to effectuate either their agreement or Mr. Nolland's decision as to the Intellectual Property and Marketing Assets.

25.    Michael requests Conitrex copy: (i) all plans, cut lists, materials orders for all projects performed by Gargoyle from 1999 until Closing; (ii) all facility related information on all computers which are on the server; and (iii) copies of all job folders for work performed by Gargoyle, but David is not agreement with the breadth and scope of that request given that it includes properties that will not be drafted by Michael, third-party confidential information, and is voluminous.

### The Closing Date

26.    The members agree to execute all documents necessary to affect the results of the draft by the Closing Date (and subsequent to the Closing Date, if necessary).  It is anticipated that at least paragraphs 13, 28-31, 33, 35 and 36 shall require documentation.

27.    The Closing Date shall be set by Mr. Nolland within approximately thirty (30) days of the completion of the draft on August 25.

28.    On the Closing Date, both David and Michael shall resign from all positions in properties and entities that were drafted by the other member, as well as any trustee or other positions, including but not limited to David's Revocable Trust in favor of his beneficiaries upon his death.

Fernando Bustos
Michael Carper
August 24, 2017
Page 7

## Resolution of Disputes

29.    Any disputes regarding the draft process, the Closing Date, or that relate to any of the disputes between the members shall be decided by binding decision of Mr. Nolland as arbitrator.  That decision shall be non-appealable and enforceable by the District Court in which the lawsuit between the members is pending.

30.    On the Closing Date, the members shall enter into broad mutual releases, excepting undisclosed fraud and liabilities.

## Miscellaneous

31.    Each member shall indemnify the other member for any subsequent third-party lawsuits for their own personal negligence or intentional acts prior to or after the closing, including but limited to any tax liability. This paragraph shall be provided in an identification agreement to be executed and exchanged at the Closing Date.   Both members agree to maintain insurance at least equivalent to the currently existing insurance.

32.    Each member shall bear their own attorneys' fees and expenses, either individually or through the companies they shall own after the draft.

33.    On the Closing Date, or thereafter as determined by Mr. Nolland, the members shall execute a dismissal with prejudice of the lawsuit that includes all claims, counterclaims and potential claims or counterclaims.  The members agree to discuss their disputes regarding their joint easement at the mediation, and, if necessary, to have Mr. Nolland resolves those disputes.

34.    Michael requests a right of first refusal for a period of thirty-six (36) months after Closing for any facility or land on Exhibit 1 attached hereto that a party wants to convey.  While David does not agree, he agrees to discuss the concept at mediation.

Fernando Bustos
Michael Carper
August 24, 2017
Page 8

## Resolution of Disputes

35.    Any disputes regarding the draft process, the Closing Date, or that relate to any of the disputes between the members shall be decided by binding decision of Mr. Nolland as arbitrator in the manner and form of proceeding that Mr. Nolland deems in his discretion to employ. That decision shall be final, non-appealable and enforceable by the District Court in which the lawsuit between the members is pending.

36.    On the Closing Date, the members shall enter into broad mutual releases, excepting undisclosed fraud and liabilities.

## Binding Agreement

37.    While additional closing and other documents are intended to be executed, this Agreement is intended to be a binding and enforceable Rule 11 Agreement, Settlement Agreement, and Arbitration Agreement between the parties.  All costs of the Arbitrator shall be borne by the Companies.

## Conclusion

38.    If the foregoing accurately reflects our agreement, please sign below and return to Mr. Nolland as a Rule 11 Agreement pursuant to the Texas Rules of Civil Procedure, which shall only be filed in the Court records if necessary to enforce the terms of this Agreement.

39.    Following the draft and up until the Closing Date, either member may agree to trade any facilities or land to each other under whatever terms agreed-upon with written notice to Mr. Nolland either signed by both members or email indicating assent to any proposed trade.

40.    Within twenty-four (24) hours following the draft and without either member writing any further checks, the checkbooks for each facility drafted shall be turned over to the member that drafted that property to avoid disputes over payments made during the transition. Prior to the Closing Date, the facilities shall make all ordinary and customary payments to or on behalf of each member as in past years.  No

Fernando Bustos
Michael Carper
August 24, 2017
Page 9

extraordinary payments or expenses shall be incurred or paid during this period to either member, an employee or on behalf of an entity.  If any such payments or expenses are incurred, then Mr. Nolland shall have the authority to offset such payments against the cash or property of the member that received or directed such payment.

Sincerely,

Edward Jason Dennis

**AGREED:**

Fernando Bustos
*Counsel for Defendants*

Michael Carper
*Counsel for Defendants*

David Postar

Michael Postar

Arden Road/ Storage Today Inc.
Sherwood Way/ Affordable Storage, Inc.
Southland Blvd / Affordable Storage, Inc.
Twin Mountain Bblvd / A Plus Super Storage, Inc
Thomason Drive / Affordable Storage, Inc.
Wadley/ APlus Super Storage, Inc.
Fairgrounds/Affordable Storage Inc.
66th & Frankford / Affordable Storage, Inc. & Homestead Shops
132nd & Frankford Shops & Rv
122nd & Frankford - Mel Abbe shops
Wolfforth Shops (New + Existing Shops)
Hwy 87 (Tahoka Hwy) Shops
32nd & Frankford + Add'l back Land + office
Quaker & 1585 / Affordable Storaage, Inc.
104th & Frankford / Affordable Storage, Inc.
4th & Frankford / Add A Closet Storage, Inc. + Add'l back land
96th & University / Add A Closet Storage, Inc. + side Land for sale
38th & Milwaukee / A Plus Super Storage, Inc.
North University & Clovis Rd / Stoage Today, Inc (includes Erkine Location)
Ratsop, Inc. / 50th & Ave Q / Affordable Storage, Inc.
1585 A Plus Rv, Inc /Shops, RV & storage (plus back 56 acres)
126th & Indiana Shops
8502 Valencia
8801 Valencia
8503 @ 8505 Valencia Shops
114th & Upland ( 116 acres)
146th & Slide Road 15 acres
146th & Indiana land
5716 & 5724 138th St - house with trees
13510 CR 1800 - Land+house
Wolfforth Affordable Storage - Land
Nth Frankford & Clovis Highway Land
Dirt pit
Gargoyle Mgmt Main Office

Exhibit 1

## Staying With Store

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| 2017 Dodge Ram 1500 | Josh Falcon | JKZ 4718 | 1C6RR7NT4HS656928 | 104th & Frankford / Affordable Storage | 132nd & Frankford Shops & RV |
| 2015 Dodge Ram 1500 | Billy Bull | FZL 9943 | 1C6RR7NT8FS597847 | A Plus Super Storage / 82nd & Univ | 132nd & Frankford Shops & RV |
| 2015 Dodge Ram 1500 | Joey Littlefield | | 1C6RR7NT4FS597845 | 4TH & Frankford Add A Closet, Inc | Aplus RV |
| 2015 Dodge Ram 1500 | Eric Willis | FKS 9245 | 1C6RR7NT2FS597844 | Southland Blvd / Affordable Storage | 50th & Frankford |
| 2011 Chevy Tahoe | Veronica Tobias | CK2 L692 | 1GNSCBE03BR137203 | Thomason Dr / Affordable Storage | 98th & University |
| 2014 Dodge Ram | Troy Chadwick | DHD 2073 | 1C6RR7NT1ES282676 | 4TH & Frankford Add A Closet, Inc | 4th & Frankford |
| 2015 Dodge Ram 1500 | Gerald Bergman | FKS 9246 | 1C6RR7NT6FS597846 | 4TH & Frankford Add A Closet, Inc | Quaker & 130th |
| 2017 Dodge Ram 1500 | Brandon Williams | | 1C6RR7NT5HS594276 | 4TH & Frankford Add A Closet, Inc | 104th & Frankford |
| 2010 Chevy Silverado | Hardin Smith | AS3 1596 | 3GCRCTE02AG136538 | Gargoyle Structures, Inc | 104th & Slide Rd (Michael's Store) |
| 2010 Toyota Tundra 2WD | Jeremy Lowrance | AC8 0501 | 5TFRY5F19AX086530 | Gargoyle Structures, Inc | 82nd & University (Michael's Store) |
| 2017 Dodge Ram 1500 | Elizabeth Pena | JBJ 7870 | 1C6RR7NT3HS594275 | N University and Clovis Rd | North University & Clovis Rd |
| 2015 Dodge Ram 1500 | Travis Borum | FKB 1718 | 1C6RR7NT0FS597843 | Sherwood Way / Affordable Storage | 32nd & Frankford |
| 2010 Toyota Tundra 4WD | David Stobaugh | AD7 4866 | 5TFUW5F12AX125913 | Gargoyle Structures, Inc | Sherwood Way - San Angelo |
| 2014 Dodge Ram | Stephen Rabb | CTX 7089 | 1C6RR7NT6ES209433 | Southland Blvd / Affordable Storage | Southland Blvd - San Angelo |
| 2012 Dodge Ram 1500 | Danny White | BX4 6438 | 1C6RD7NT1CS194755 | Thomason Dr / Affordable Storage | Fairgrounds - Midland |
| 2012 Chevy Tahoe | Dolores Reyes | BSJ5412 | 1GNSKBE04CR308545 | Wadley Ave Aplus Super Storage | Thomason Drive - Midland |

## Staying With David

| Truck Type | Driver | Plate # | Vin # | Titled To | |
|---|---|---|---|---|---|
| 2012 Dodge Ram 1500 | David Postar | BJC 6045 | 1C6RD7NTXCS269727 | Thomason Dr / Affordable Storage | David Postar's Truck |
| 2006 Chevy Silverado 2500 | David Postar | | 1GCHK23226F104601 | Gargoyle Structures, Inc ?? | David's Work Truck |
| 2007 BMW | Becky Postar | | WBAHN835X7DT68938 | 96th & University / Add A Closet Storage | David's Wife |
| 2016 Toyota 4 Runner | Keri Wilson | HBS 5427 | JTEBU5JR8G5319985 | Gargoyle Structures, Inc | David P's Nanny |
| 2013 Dodge Ram 2500 | Angel Leon | BE3 5676 | 3C6UR5FLXDG581098 | Gargoyle Structures, Inc | Gargoyle EE |
| 2016 Dodge Ram 2500 | Gavin Hyland | BE3 5677 | 3C6UR5FL4DG363064 | Gargoyle Structures, Inc | Gargoyle EE |

## Staying With Michael

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| 2014 Dodge Ram | Michael Postar | DXT 9960 | 1C6RR7NTXES282675 | Thomason Dr / Affordable Storage | Michael Postar's Truck |
| 2016 Dodge Ram | Lori Postar | | 1C6RR7NT4GS196720 | Ratsop, Inc | Michael's Wife |
| 2004 Cadillac Escalade | Lori Postar | | 3GYFK66N34G338885 | Michael R. Postar, Inc. | Michael's Wife (used as extra vehicle) |
| 2005 Nissan Murano | Dayonne Rose | JGL 490 | JN8AZ08T25W331888 | Michael R. Postar, Inc. | Michael's peronal EE |
| 2008 Chevy Tahoe | Joanne | 57K LJ9 | 1GNFC13JX8R121371 | Ratsop, Inc. | Michael's House Manager |
| 2014 Jeep | Orlie Roach | CWD 1330 | 1C4HJWFG8EL203800 | Michael R. Postar, Inc. | Gargoyle Management Corporate Employee (Jeep was Lori's for 1 year) |

## Corporate Employee / Additional Vehicles to be split

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| 2012 Dodge Ram 1500 | Dave Shideler | BL7 9981 | 1C6RD7NT5CS125907 | Thomason Dr / Affordable Storage | Gargoyle Management Corporate Employee |
| 2013 Dodge Ram | Shawn Vinson | CFD 4517 | 1C6RR7NT9DS515928 | Southland Blvd / Affordable Storage | Gargoyle Management Corporate Employee |
| 2013 Dodge Ram | Jeff Trevino | CNZ 6146 | 1C6RR7NT5DS721571 | Ratsop, Inc. | Gargoyle Management Corporate Employee |
| 2013 Chevy Silverado | Brendan Beadles | BJC 6157 | 3GCPKTE78DG117289 | InTouch Real Estate, Inc | Gargoyle Management Corporate Employee |
| 2013 Dodge Ram 1500 | Matt Roach | CKB 6041 | 1C6RR7NT7DS721572 | InTouch Real Estate, Inc | Gargoyle Management Corporate Employee |
| 2013 Ford Expedition | Sarah Shideler | CKT 3050 | 1FMJU2A55DEF24764 | InTouch Real Estate, Inc | Gargoyle Management Corporate Employee |
| 2011 Chevy Silverado | Mowing Truck | BK6 3783 | 1GC1KYCG9BF235969 | InTouch Real Estate, Inc | Mowing Crew for all lubbock locations use |
| 2005 Chevy Silverado (Including Welding Equipment) | Welding Truck (2017) | BE3 5673 | 1GCHK23275F842814 | Ratsop, Inc. | Used by gargoyle structures & Gargoyle Management for company project welding |
| 2011 Chevy Silverado | Damian | BE3 5674 | 1GC1KYCG2BF105497 | Thomason Dr / Affordable Storage | Gargoyle EE |
| 2015 Dodge Ram 2500 | Patrick Green | BE3 5675 | 3C6UR5FL4FG546205 | 32ND & Frankford Affordable Storage | Gargoyle EE |

## Addition Vehicles to be split??

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| Show Trailer - Currently in San Angelo for Apt Expo | | | | | Trailer with storage unit build into it - built 08/2017 |
| 1995 Int'l Dump Truck | Gargoyle | 37M VN9 | 1HTSCAAM2SH650298 | Gargoyle Structures, Inc | Gargoyle Structures Construction Truck |
| 1962 Ford (Ghostbusters Car) | Ghostbusters Car | | 2W72Z108250 | David Postar ?? | David bought for Michael as a Bday gift?? |
| 1985 Buick - Herse | Halloween | | 1G4BR35Y0FX457529 | David Postar | David bought for Michael as a Bday gift?? |

| | Corporate Phones / Hotspot (Stay With Employee) Family Member | |
| --- | --- | --- |
| | Cell | |
| Michael Postar | (806) 789-6087 | |
| David Postar | (806) 789-6072 | |
| Sarah Shideler | (806) 632-2307 | |
| Orlie Roach | (806) 544-8197 | |
| Dave Shideler | (806) 928-2996 | |
| Shawn Vinson | (806) 239-6044 | |
| Jeff Trevino | (806) 559-3828 | |
| Domingo Tello | (806) 500-5243 | |
| Brendan Beadles | (806) 939-6743 | |
| Lori Postar | (806) 441-0733 | |
| Brent Postar | (806) 620-8051 | |
| Cole Postar | (806) 620-9048 | |
| Dalton Postar | (806) 500-9906 | |
| Judy Rowdan | (806) 239-4697 | |
| Becky Postar | (806) 928-6716 | |
| Doannie Rose | (806) 928-2782 | |
| Brendan's Ipad Air | (806) 500-9981 | |
| Orlie's HotSpot | (806) 786-3263 | |
| Matt's HotSpot | (806) 281-4521 | |
| Jeff' HotSpot | (806) 543-9581 | |
| Dave S's HotSpot | (806) 445-6521 | |

| Gargoyle EE's (Stay With Employee) | | |
| --- | --- | --- |
| | Cell | |
| Gavin Hyland | (806) 441-7194 | |
| Patrick Green | (806) 535-0134 | |
| Angel Leon | (806) 368-2499 | |
| Jose Martell "Pancho" | (806) 559-9734 | |

| Store Phones - Stays with Employee - Open numbers can be split between memebers | | |
| --- | --- | --- |
| | Cell | Location Maintains Phone |
| Blake West | (806) 368-2820 | 104th & Frankford / Affordable Storage |
| Brandon Williams | (806) 543-5061 | 104th & Frankford / Affordable Storage |
| HL Smith | (806) 441-6134 | 104th & Slide Rd - A Plus Super Storage |
| Courtney Gage | (806) 620-6468 | 104th & Slide Rd - A Plus Super Storage |
| Joshua Martin | (806) 773-2503 | 132nd & Frankford / Affordable Shops & RV |
| Josh Falcon | (806) 831-3437 | 132nd & Frankford / Affordable Shops & RV |
| Billy Bull | (806) 939-6765 | 132nd & Frankford / Affordable Shops & RV |
| Clayton Lozano | (806) 445-2963 | 1585 & University / A Plus RV |
| Joey Littlefield | (806) 543-4052 | 1585 & University / A Plus RV |
| Travis Borum | (806) 239-2476 | 32nd & Frankford / Affordable Storage |
| Bubba Cline | (806) 470-1511 | 32nd & Frankford / Affordable Storage |
| Collin McIntosh | (806) 500-9195 | 38th& Milwaukee / A Plus Super Storage |
| Josh DeWees | (806) 831-5207 | 38th& Milwaukee / A Plus Super Storage |
| Troy Chadwick | (806) 441-0935 | 4th & Frankford / Add A Closet Storage |
| John Striednig | (806) 928-4016 | 4th & Frankford / Add A Closet Storage |
| Adam Wooley | (806) 543-5062 | 50th & Ave Q / Affordable Sorage |
| Eric Willis | (806) 831-4450 | 50th & Ave Q / Affordable Sorage |
| Eli Vangundy | (806) 928-2931 | 50th & Ave Q / Affordable Sorage |
| Rod Rodrigues | (806) 543-8731 | 66th & Frankford / Affordable Storage |
| Jeremy Lowance | (806) 535-8227 | 82nd & Univeristy / Aplus Super storage |
| Todd Felton | (806) 543-7592 | 82nd & Univeristy / Aplus Super storage |
| Veronica Tobias | (806) 831-3457 | 96th & University / Add A Closet Storage |
| Elizabeth Pena | (806) 441-6955 | Nth Univ & Clovis Road / Storage Today |
| Jose Avail | (806) 535-7177 | Nth Univ & Clovis Road / Storage Today |
| Gerald Bergman | (806) 239-6025 | Quaker & 1585 / Affordable Storage |
| Lucas | (806) 445-2780 | Quaker & 1585 / Affordable Storage |
| OPEN | (806) 239-2427 | |
| OPEN | (806) 252-6271 | |
| OPEN | (806) 543-9950 | |
| OPEN | (806) 620-2318 | |
| OPEN | (806) 939-8888 | |
| HOTSPOT - Not used | (806) 252-4446 | |
| HOTSPOT - Not used | (806) 252-4976 | These Hotspots (with the exception of the one at Southland) - |
| HOTSPOT - Not used | (806) 252-7118 | have been lost/or are at a store and are nt being used. I would |
| HOTSPOT - Not used | (806) 500-5425 | suggest since the hotspot equipment is $1 that these numbers be split and each member can order new equipment or cancelled. |
| HOTSPOT - @ Southland | (806) 786-6037 | The one at Southland is a back up for all the San Angelo stores. |

### San Angelo Managers

| | Cell | |
| --- | --- | --- |
| Jason Tavarez | (325) 262-5333 | Arden Rd / Storage Today |
| OPEN | (325) 733-6167 | Arden Rd / Storage Today |
| Matt Estin | (325) 231-9466 | Sherwood Way / Affordable Storage |
| David Stobaugh | (325) 227-5789 | Sherwood Way / Affordable Storage |
| Justin Rodeheaver | (325) 212-9129 | Southland Blvd / Affordable Storage |
| Joey Wise | (325) 212-9949 | Southland Blvd / Affordable Storage |
| Stephen Feagan | (325) 280-7133 | Southland Blvd / Affordable Storage |
| Stephen Rabb | (325) 374-2834 | Twin Mt / A Plus Super Storage |

### Midland Managers

| | Cell | |
| --- | --- | --- |
| Danny White | (432) 349-3034 | Fairgrounds / Affordable Storage |
| OPEN | (432) 853-5053 | Fairgrounds / Affordable Storage |
| Dolores | (432) 312-3119 | Thomason Drive / Affordable storage |
| Jayson Turner | (432) 230-5459 | Thomason Drive / Affordable storage |
| OPEN | (432) 770-7331 | Thomason Drive / Affordable storage |
| Scott Moss | (432) 230-3608 | Wadley Ave / A Plus Super Storage |
| Tanairi Perez | (432) 978-1187 | Wadley Ave / A Plus Super Storage |

## Gary A Taylor

**From:** "Gary A Taylor" <gataylor@suddenlinkmail.com>
**Date:** Wednesday, August 02, 2017 10:40 AM
**To:** "David Postar" <gargoyledave@yahoo.com>
**Subject:** personal loans to the corporations

### Michael

| | |
|---|---|
| 104th & Frankford (earnest money on 138th land) | $10,000.00 |
| 146th & Indiana<br>It was $55,000 and Michael withdrew $840.67<br>to close the PCB Credit Card bank account in June) | $54,159.33 |
| 146th & Slide Road | $380,000.00 |
| Clovis Road & Frankford | $100.00 |
| Gargoyle Management | $75,000.00 |
| In Touch Real Estate | $628,695.08 |
| Twin Mountain Drive | $95,000.00 |
| Wolfforth Affordable | $5,000.00 |

### David

| | |
|---|---|
| Clovis Road & Frankford | $191,860.26 |
| In Touch Real Estate | $251,195.08 |
| Twin Mountain Drive | $75,000.00 |
| Wolfforth Affordable | $296,514.83 |

3

Michael & David Postar
Consolidated Statements for All Corporations
YTD Undistributed Taxable Income (Retained Earnings)
As of _7-31-17_

| Acct # | Account | YTD UTI (RE) |
|---|---|---|
| 130 | Michael R Postar Inc / Advanced Self Storage | 1,405,159.37 |
| 131 | A-Plus Self Storage | 603,129.59 |
| 133 | Ratsop Inc | 496,164.73 |
| 135 | Gargoyle Structures Inc | 230,349.45 |
| 137 | 4th & Frankford / Add-A-Closet   NON-TAXABLE 89,257.62 | 612,045.82 |
| 138 | 32nd & Frankford / Affordable   465,854.80 | 658,283.57 |
| 139 | 96th & University / Add-A-Closet   310,913.78 | 396,408.52 |
| 140 | N. Univ. & Clovis Road / Storage Today | 687,308.06 |
| 141 | Sherwood Way / Affordable Storage | 386,743.87 |
| 142 | Arden Road / Storage Today | 186,505.99 |
| 143 | Southland Blvd / Affordable Storage | 357,597.73 |
| 144 | 38th & Milwaukee / A-Plus Super Storage | 521,724.28 |
| 145 | Thomason Drive / Affordable Storage | 934,440.42 |
| 146 | 104th & Frankford / Affordable Storage | 1,093,397.26 |
| 147 | Wolfforth Affordable Storage Inc | < 103,041.60 > |
| 149 | Wadley Ave / A-Plus Super Storage | 375,220.36 |
| 151 | Quaker & 1585 / Affordable Storage | 53,821.82 |
| 152 | Clovis Road & Frankford / Affordable Warehouses | < 18,032.50 > |
| 153 | Fairgrounds / Affordable Storage | 35,232.38 |
| 154 | 1585 A-Plus RV | < 575,575.63 > |
| 155 | 146th Street and Slide Road Inc | < 127,312.78 > |
| 156 | A-Plus Super Storage / Twin Mountain Drive | < 414,656.14 > |
| 157 | Gargoyle Management | 41,610.36 |
| 158 | 146th & Indiana Affordable Storage Inc | < 11,897,18 > |
| 150 | In Touch Real Estate | < 133,725.33 > |
|  | THE DIRT PIT | 51,667.45 |

A

| 104 TH: FRANKFORD CORP | 2017 PROJECTED INCOME | % | RETAINED EARNING @ 7-31-17 |
|---|---|---|---|
| 104 TH | 691,616 | 24.33 | 266,023.55 |
| 132 NO | 1,677,416 | 59.00 | 645,104.39 |
| 122 NO | 473,880 | 16.67 | 182,269.32 |
| 5716  138 TH | ~ | — | — |
| 5724  138 TH | — | — | — |
| 13502 - 13510 FRANKFORD | ~ | — | — |
| TOTAL | 2,842,912 | 100 % | 1,093,397.26 |

| THOMPSON CORP | | | |
|---|---|---|---|
| THOMPSON | 1,294,883 | 78.96 | 729,938.16 |
| 66 TH | 273,968 | 16.71 | 154,473.99 |
| HOMESTEAD | 71,100 | 4.33 | 40,028.27 |
| TOTAL | 1,639,951 | 100 % | 924,440.42 |

| WOLFFORTH CORP | | | |
|---|---|---|---|
| WOLFFORTH | 158,000 | 54.48 | < 56,137.06 > |
| HWY 87 | 132,000 | 45.52 | < 46,904.54 > |
| TOTAL | 290,000 | 100 % | <103,041.60> |

| 32ND: FRANKFORD CORP | | | |
|---|---|---|---|
| 32 ND | 845,224 | C:  90.94    S:  86.47 | C: 174,994.73   S: 402,324.64 |
| 8502  VALENCIA | 31,800 | C:  3.42    S:  3.25 | C:  6,581.06   S:  15,140.28 |
| 8503  VALENCIA | 48,120 | 4.92 | S:  22,920.06 |
| 8505  VALENCIA | — | — | — |
| 8501  VALENCIA | 52,380 | C:  5.64    S:  5.36 | C:  10,852.98   S:  24,967.82 |
| TOTAL | 977,524 | 100 % | C: 192,428.77   S: 465,854.80 |

C = C-CORP EARNINGS: PROFITS

S = S-CORP UNDISTRIBUTED TAXABLE INCOME

4    B

CHATEAU SUPPLY COUNT

Single Pack Round Locks - 1200

2 - Pack Round Locks - 900

Blue Locks - 260

Gold Locks - 480

Extension Overlocks - 20

2" Trailer Balls - 85

Bubble Wrap Rolls - 16

Foam Wrap Rolls - 24

2-Handle Shrink Wrap - 22

Single Handle Shrink Wrap - 51

24x10 Bubble Wrap - 72

12x15 Bubble Wrap - 144

16x10 Bubble Wrap - 48

Packing Peanuts - 30

6-Wheel Carts - 7

Paper Pads - 70

Sofa Cove r- 472

Twin Mattress Bag - 400

Full Mattress Bag - 350

Queen Mattress Bag - 575

King Mattress Bag - 550

Dust Cover - 324

3-Roll Count Packing Tape - 9

Exhibit 5

Fragile Tape Dispenser - 144

Clear Tape Dispenser - 82

Key Tags - 13 cases

10 lb. Wrapping Paper - 5 cases

Rope - 120 (approx)

Utility Knife - 51 (approx)

Gloves - 50 (approx)

Work Gloves - 30 (approx)

Safety Glasses - 9

*******************************************

Polaris Herbicide (Sterilizer) - 13

Cornerstone Herbicide (Round Up) - 17

Gulfstream (Bonding Agent) - 5

SpraKill - SK13 (Soil Sterilizer) - 35

Final Rodenticide - 35

Suspend SC (Insecticide) - 16

| Trailers | | |
|---|---|---|
| | hubs | 5 |
| | hubs w/ brakes | 2 |
| | top wind jacks | 2 |
| | side wind jacks | 3 |
| | break away kits | 2 |
| | 5 wire harness | 3 |
| | collars | 4 |
| | bearing/race sets | 3 |

| Plumbing | | |
|---|---|---|
| | Delta faucet | 1 |
| | Moen faucet | 1 |
| | laundry faucet | 1 |
| | Glacier bay faucet | 1 |
| | Flush valve assemblies | 2 |
| | Fill valves | 3 |
| | Flapper valves | 16 |

| Keypads | | |
|---|---|---|
| | 3200i | 1 |
| | 3200i displays | 3 |
| | 3200i motherboards | 4 |
| | RS485 Interface | 3 |
| | Office intercom | 1 |

| Gate Assemblies | | |
|---|---|---|
| | Motherboards | 2 |
| | Small chain guide wheels | 4 |
| | White gate wheels | 5 |
| | Motor capcitors | 3 |
| | AELD loop modules | 5 |
| | LM loop module | 1 |

| Electrical | | |
|---|---|---|
| | light timer switches | 14 |
| | Tork 24 hr timer | 1 |
| | 30 amp disconnect switch | 1 |
| | 60 amp disconnect switch | 1 |

| Ballasts | | |
|---|---|---|
| | 4 bulb F32 T8 | 2 |
| | 2 bulb F96 T12 | 10 |
| | 2 bulb F96 T8 | 4 |
| | 2 bulb F96 T12 HO | 2 |
| | 2 bulb F40 T12 | 5 |

| Lithonia 4' light covers | | 14 |
|---|---|---|

| HVAC - capacitors | | | |
|---|---|---|---|
| 35/5 | 1 | 70/5 | 1 |
| 45/5 | 1 | 70/7.5 | 1 |
| 50/5 | 1 | 80/5 | 1 |
| 55/5 | 1 | 80/7.5 | 1 |
| 60/5 | 1 | | |

| Thermostats | 2 |
|---|---|
| Alarm keypads | 2 |
| Microphones | 4 |

| Cameras | | |
|---|---|---|
| | License plate | 6 |
| | Dome | 11 |
| | Speco domes | 13 |
| | Panasonic domes | 20 |
| | HDMI cords | 2 |

| DVRs | | |
|---|---|---|
| | Truvision 12 HD (used) | 1 |

| Gates | | |
|---|---|---|
| | Gate sensing edge | 3 |
| | Bump pad transmitter | 3 |
| | Bump pad receiver | 1 |

| Trilogy Locks | |
|---|---|
| | 4 |

| Radio | For dust/climate building |
|---|---|
| | 1 |

| Light bulbs | | | |
|---|---|---|---|
| | F40 T12 | 55 | |
| | F32 T8 | 7 | |
| | 175W Mercury Vapor | 11 cases | 12 per case |
| | 150W Metal Halide | 7.5 cases | |

**Box inventory**

| Box inventory | |
|---|---|
| Small | -187 |
| Medium | 50 |
| Large | 306 |
| Extra Large | 585 |
| Wardrobe | 25 |

Michael Postar Personal Property

1 Conference Table and chairs (seats 12) – currently located in New Corporate Office in smaller conference room



## Staying With Store

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| 2017 Dodge Ram 1500 | Josh Falcon | JKZ 4718 | 1C6RR7NT4HS656928 | 104th & Frankford / Affordable Storage | 132nd & Frankford Shops & RV |
| 2015 Dodge Ram 1500 | Billy Bull | FZL 9943 | 1C6RR7NT8FS597847 | A Plus Super Storage / 82nd & Univ | 132nd & Frankford Shops & RV |
| 2015 Dodge Ram 1500 | Joey Littlefield | | 1C6RR7NT4FS597845 | 4TH & Frankford Add A Closet, Inc | Aplus RV |
| 2015 Dodge Ram 1500 | Eric Willis | FKS 9245 | 1C6RR7NT2FS597844 | Southland Blvd / Affordable Storage | 50th & Frankford |
| 2011 Chevy Tahoe | Veronica Tobias | CK2 L692 | 1GNSCBE03BR137203 | Thomason Dr / Affordable Storage | 96th & University |
| 2014 Dodge Ram | Troy Chadwick | DHD 2073 | 1C6RR7NT1ES282676 | 4TH & Frankford Add A Closet, Inc | 4th & Frankford |
| 2015 Dodge Ram 1500 | Gerald Bergman | FKS 9246 | 1C6RR7NT6FS597846 | 4TH & Frankford Add A Closet, Inc | Quaker & 130th |
| 2017 Dodge Ram 1500 | Brandon Williams | | 1C6RR7NT5HS594276 | 4TH & Frankford Add A Closet, Inc | 104th & Frankford |
| 2010 Chevy Silverado | Hardin Smith | AS3 1596 | 3GCRCTE02AG136538 | Gargoyle Structures, Inc | 104th & Slide Rd (Michael's Store) |
| 2010 Toyota Tundra 2WD | Jeremy Lowrance | AC8 0501 | 5TFRY5F19AX086530 | Gargoyle Structures, Inc | 82nd & University (Michael's Store) |
| 2017 Dodge Ram 1500 | Elizabeth Pena | JBI 7870 | 1C6RR7NT3HS594275 | N University and Clovis Rd | North University & Clovis Rd |
| 2015 Dodge Ram 1500 | Travis Borum | FKB 1718 | 1C6RR7NT0FS597843 | Sherwood Way / Affordable Storage | 32nd & Frankford |
| 2010 Toyota Tundra 4WD | David Stobaugh | AD7 4866 | 5TFUW5F12AX125913 | Gargoyle Structures, Inc | Sherwood Way - San Angelo |
| 2014 Dodge Ram | Stephen Rabb | CTX 7069 | 1C6RR7NT6ES209433 | Southland Blvd / Affordable Storage | Southland Blvd - San Angelo |
| 2012 Dodge Ram 1500 | Danny White | BX4 6438 | 1C6RD7NT1CS194755 | Thomason Dr / Affordable Storage | Fairgrounds - Midland |
| 2012 Chevy Tahoe | Dolores Reyes | BSJ5412 | 1GNSKBE04CR308545 | Wadley Ave Aplus Super Storage | Thomason Drive - Midland |

## Staying With David

| Truck Type | Driver | Plate # | Vin # | Titled To | |
|---|---|---|---|---|---|
| 2012 Dodge Ram 1500 | David Postar | BJC 6045 | 1C6RD7NTXCS269727 | Thomason Dr / Affordable Storage | David Postar's Truck |
| 2006 Chevy Silverado 2500 | David Postar | | 1GCHK23226F104601 | Gargoyle Structures, Inc ?? | David's Work Truck |
| 2007 BMW | Becky Postar | | WBAHN835X7DT68938 | 96th & University / Add A Closet Storage | David's Wife |
| 2016 Toyota 4 Runner | Keri Wilson | HBS 5427 | JTEBU5JR8G5319985 | Gargoyle Structures, Inc | David P's Nanny |
| 2013 Dodge Ram 2500 | Angel Leon | BE3 5676 | 3C6UR5FLXDG581098 | Gargoyle Structures, Inc | Gargoyle EE |
| 2016 Dodge Ram 2500 | Gavin Hyland | BE3 5677 | 3C6UR5FL4GG363064 | Gargoyle Structures, Inc | Gargoyle EE |

## Staying With Michael

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| 2014 Dodge Ram | Michael Postar | DXT 9960 | 1C6RR7NTXES282675 | Thomason Dr / Affordable Storage | Michael Postar's Truck |
| 2016 Dodge Ram | Lori Postar | | 1C6RR7NT4G5196720 | Ratsop, Inc | Michael's Wife |
| 2004 Cadillac Escalade | Lori Postar | | 3GYFK66N34G338885 | Michael R. Postar, Inc. | Michael's Wife (used as extra vehicle) |
| 2005 Nissan Murano | Dayonne Rose | JGL 490 | JN8AZ08T25W331888 | Michael R. Postar, Inc. | Michael's peronal EE |
| 2008 Chevy Tahoe | Joanne | 57K LJ9 | 1GNFC13JX8R121371 | Ratsop, Inc. | Michael's House Manager |
| 2014 Jeep | Orlie Roach | CWD 1330 | 1C4HJWFG8EL203800 | Michael R. Postar, Inc. | Gargoyle Management Corporate Employee (Jeep was Lori's for 1 year) |

## Corporate Employee / Additional Vehicles to split as follows

| Truck Type | Driver | Plate # | Vin # | Titled To | Staying With this Physical Location |
|---|---|---|---|---|---|
| **Michael Keeps** | | | | | |
| 2013 Ford Expedition | Sarah Shideler | CKT 3050 | 1FMJU2A55DEF24764 | inTouch Real Estate, Inc | Gargoyle Management Corporate Employee |
| 2013 Dodge Ram | Shawn Vinson | CFD 4517 | 1C6RR7NT9DS515928 | Southland Blvd / Affordable Storage | Gargoyle Management Corporate Employee |
| 2013 Dodge Ram 1500 | Matt Roach | CKB 6041 | 1C6RR7NT7DS721572 | InTouch Real Estate, Inc | Gargoyle Management Corporate Employee |
| 2011 Chevy Silverado | Mowing Truck | BK6 3763 | 1GC1KYCG9BF235969 | InTouch Real Estate, Inc | Mowing Crew for all lubbock locations use |
| 2012 Dodge Ram 1500 | Dave Shideler | BL7 9981 | 1C6RD7NT5CS125907 | Thomason Dr / Affordable Storage | Gargoyle Management Corporate Employee |
| 1962 Ford (Ghostbusters Car) | Ghostbusters Car | | 2W72Z108250 | David Postar ?? | David bought for Michael as a Bday gift?? |
| 1985 Buick - Herse | Halloween | | 1G4BR35Y0FX457529 | David Postar | David bought for Michael as a Bday gift?? |
| **David Keeps** | | | | | |
| 2015 Dodge Ram 2500 | Patrick Green | BE3 5675 | 3C6UR5FL4FG546205 | 32ND & Frankford / Affordable Storage | Gargoyle EE |
| 2013 Chevy Silverado | Brendan Beadles | BJC 6157 | 3GCPKTE76DG117289 | InTouch Real Estate, Inc | Gargoyle Management Corporate Employee |
| 2013 Dodge Ram | Jeff Trevino | CNZ 6146 | 1C6RR7NT5DS721571 | Ratsop, Inc. | Gargoyle Management Corporate Employee |
| 2011 Chevy Silverado | Damian | BE3 5674 | 1GC1KYCG2BF105497 | Thomason Dr / Affordable Storage | Gargoyle EE |
| 2005 Chevy Silverado (Including Welding Equipment) | Welding Truck (2017) | BE3 5673 | 1GCHK23275F842814 | Ratsop, Inc. | Used by gargoyle structures & Gargoyle Management for company project welding |
| 1995 Int'l Dump Truck | Gargoyle | 37M VN9 | 1HTSCAAM2SH650298 | Gargoyle Structures, Inc | Gargoyle Structures Construction Truck |
| Show Trailer - Currently in San Angelo for Apt Exoo | | | | | Trailer with storage unit build into it - built 08/2017 |

This Spreadsheet should operate as a Rule 1 Agreement, pursuant to the Texas Rules of Civil Procedure.

Michael Postar      Date

David Postar      Date

Regarding the Lubbock inventory listed on Exhibit 5 to the Rule 11 Settlement Agreement as well as inventory located in San Angelo and Midland, the members agree to divide all inventory located in San Angelo, Midland & Lubbock evenly by representatives of each member acting together.

Regarding Debts owed to each Member, these debts shall remain the responsibility of the property, whether bank owed debt or debt owed to the non-acquiring member. The respective debts owed by each of the properties to the non-acquiring member shall be paid or trued-up at closing.

Parties agree to Michael's characterization of the property on Exhibit 6 to the Rule 11 Settlement Agreement as Michael's separate property.

This letter should operate as a *Rule 11 Agreement*, pursuant to the Texas Rules of Civil Procedure.

_____       _____
Michael Postar        Date          David Postar        Date

**Store Names, Logos & Trademarks:**

David Postar will have the sole use of the A Plus Super Storage, A Plus Storage, A Plus RV & Shops Affordable Storage, Affordable Self Storage, Affordable Rv & Shops, Storage Today and Add-A-Closet Storage, and any derivations of these names in Tom Green County, TX and Midland County, TX per the Rule 11 Settlement Agreement.

Michael Postar will have the sole use of the A Plus Super Storage, A Plus Storage, A Plus RV & Shops Affordable Storage, Affordable Self Storage, Affordable Rv & Shops, Storage Today and Add-A-Closet Storage and any derivations of these names in Lubbock County TX per the Rule 11 Settlement Agreement.

David Postar and Michael Postar will have joint use and continued joint ownership of the A Plus Super Storage, A Plus Storage, Affordable Storage, Affordable Self, Storage Today and Add-A-Closet Storage marks for all future locations located outside of Tom Green County, TX, Midland County, TX & Lubbock County, TX. Appropriate trademark registrations and contractual documentation will be prepared to effectuate these agreements.

**Corporate Office Furniture:**

Corporate office furniture located at 5625 CR 7410, Lubbock TX and purchased by Gargoyle Management is to be split evenly between both Members. If there is an uneven division, David Postar will receive the extra desk, per the Rule 11 Settlement Agreement.

**Domain Names:**

Members agree to the attached exhibit documenting the split of domain name ownership per the Rule 11 Settlement Agreement.

**Tractor & Lawn Equipment**

Michael Postar will have sole ownership of the tractor and lawn equipment location in Lubbock, TX per the Rule 11 Settlement Agreement.

**Images of Minor Children**

Both Members agree to not distribute or use the image of any other member's children in any marketing, advertising, videos or car wraps.

**Closing Documents**

The member receiving an interest in one of the businesses will be responsible for preparing the first draft of any assignment documents.

**Computer Access, Plans and other Data**

The members agree to share with Michael Postar the complete build files and documents for each facility by him. The complete and original build files shall go to the Member that receives ownership of each respective facility, including CAD files, cut list, builders plans, design documents, and engineering plans (including stamped engineering plans for those facilities constructed within city limits). The forgoing plans shall be provided in both hard copy (to the extent available) as well as electronic format. David Postar shall not be required to turn over project files or plans for third party projects. The parties shall coordinate with CoNetrix to facilitate the copying and transfer of this data from all applicable computers.

Each member has received a copy of the all monthly books for all facilities, and each respective owner for each facility shall receive the originals or all such books and records for their respective facilities. Michael Postar shall return Gargoyle files in his possession, custody and control.

**Duplication of Server**

The members agree that the server located at the Gargoyle office shall be duplicated at the joint expense of the parties and each member shall have a server with the applicable data for their facilities and generic or general programs, etc. necessary for the operations and networking of their businesses.

**Signage**

With respect to the Lubbock facilities going to David Postar (or his related entities) signage changes consistent with party's agreements shall be completed with all deliberate speed, but in any event by December 31, 2017.

**Continuing Jurisdiction**

Christopher Nolland shall retain continuing jurisdiction to resolve any and all disputes between the parties in accordance with the Rule 11 Agreement signed on August 24, 2017.  Without limiting the forgoing, this jurisdiction shall include resolving and determining any issues that may arise under or in connection with the various Rule 11 Agreements signed during the mediation.

This letter shall operate as a Rule 11 Agreement, pursuant to the Texas Rules of Civil Procedure.

_____          _____
Michael Postar           Date                              David Postar           Date

| | | | | | |
|---|---|---|---|---|---|
| **USERNAME: postar@door.net** | | **PASSWORD: #1Storage** | | | |
| Domain Name | Account No. | Points To | | Auto Renew | Expiration Date |
| a-plussuperstorage82ndstreet.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| a-plussuperstoragemilwaukee.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| advancedstoragelubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 3/11/19 |
| advancedstorageoflubbock.com | 31890175 | Web Forwarding | | On | 2/11/20 |
| advancedstorageslideroad.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| add-a-closetsouth.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| add-a-closetstorage.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| addaclosetstoragelubbock.com | 31890175 | Web Forwarding | | On | 3/11/19 |
| addaclosetstorageoflubbock.com | 31890175 | ADNS Services | | On | 2/11/20 |
| affordablestorage50thstreet.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| affordablestoragefrankford.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 10/5/19 |
| affordablestoragelubbock.co | 31890175 | Under Construction Page | | On | 2/8/21 |
| affordablestoragelubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 3/11/19 |
| affordablestoragewolfforth.com | 31890175 | ADNS Services | | On | 1/4/37 |
| affordableweststorage.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| aplusstorageoflubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 2/11/20 |
| aplussuperstoragelubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 3/11/19 |
| storagelubbockaddacloset.com | 31890175 | ADNS Services | | On | 4/6/20 |
| ghostcontact.co | 31890175 | Under Construction Page | | On | 1/27/24 |
| ghostcontact.com | 31890175 | Under Construction Page | | On | 1/27/24 |
| ghostcontact.info | 31890175 | ns1.pendingrenewaldeletion.com \| ns2.p endingrenewaldeletion.com | | Off | Expired |
| ghostcontact.net | 31890175 | Under Construction Page | | On | 1/27/24 |
| ghostcontact.org | 31890175 | Under Construction Page | | On | 1/27/24 |
| intouchrealestate.co | 31890175 | ADNS Services | | On | 2/8/21 |
| storagetodaylubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 11/8/17 |
| storagetodayoflubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 3/15/20 |
| affordablestorageodessa.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 6/23/18 |
| aplussuperstorage.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 3/11/19 |
| lowcoststoragelubbock.com | 31890175 | Web Forwarding | | Off | 6/15/18 |
| lubbockselfstorage.co | 31890175 | Under Construction Page | | On | 2/8/21 |
| planostorage.co | 31890175 | Under Construction Page | | Off | 2/8/21 |
| selfstorageoflubbock.co | 31890175 | Under Construction Page | | On | 2/9/21 |
| storageodessa.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | | On | 1/11/18 |
| storageplano.com | 31890175 | Under Construction Page | | On | 2/8/21 |

| | | |
|---|---|---|
| **Michael's Domains** | | |
| **USERNAME: SELFSTORAGEOFLUBBOCK** | | **PASSWORD: #1Storage** |
| Domain Name | Create | Expire Date |
| addaclosetstudents.com | 12/8/16 | 12/8/18 |
| affordablestorage66thst.com | 2/10/15 | 2/10/20 |
| affordablestorageindiana.com | 4/18/14 | 4/18/19 |
| affordablestoragequaker.com | 6/18/13 | 6/18/22 |
| affordablestoragestudents.com | 12/8/16 | 12/8/18 |
| aplusshoprentals.com | 3/11/16 | 3/11/21 |
| aplusstorageslideroad.com | 4/18/14 | 4/18/19 |
| aplusstoragestudents.com | 12/8/16 | 12/8/18 |
| brentpostar.com | 8/6/14 | 8/6/19 |
| colepostar.com | 8/6/14 | 8/6/19 |
| daltonpostar.com | 8/6/14 | 8/6/19 |
| herosfirst.com | 3/31/15 | 3/31/20 |
| herosservice.com | 4/7/15 | 4/7/20 |
| intouchrealestate.com | 3/20/12 | 3/20/18 |
| lubbockbatman.com | 2/17/17 | 2/17/22 |
| lubbockzombiehunt.com | 3/31/14 | 3/31/19 |
| storagetodaystudents.com | 12/8/16 | 12/8/18 |
| txbatman.com | 2/17/17 | 2/17/22 |
| lubbockrvandboatstorage.com | 6/19/12 | 6/19/18 |
| shoprentalslubbock.com | 6/5/15 | 6/5/20 |
| **USERNAME: AFFORDABLESTORAGE** | | **PASSWORD: #1Storage** |
| affordablestorageoflubbock.com | | 2/20/2018 |



1

**David's Domains**

| USERNAME: SELFSTORAGEOFLUBBOCK | | PASSWORD: #1Storage | |
|---|---|---|---|
| Domain Name | Create | Expire Date | |
| affordablestoragefairgrounds.com | 8/13/13 | 8/13/18 | |
| gargoylestructures.com | 4/2/14 | 4/2/19 | |
| midlandboatandrvstorage.com | 6/19/12 | 6/19/18 | |
| midlandboatsstorage.com | 6/19/12 | 6/19/18 | |
| midlandrvandboatstorage.com | 6/19/12 | 6/19/18 | |
| midlandrvstorage.com | 6/19/12 | 6/19/18 | |
| midlandstorage.com | 8/2/12 | 8/2/19 | |
| selfstorageofsanangelo.com | 3/23/17 | 3/23/19 | |
| gargoylemanagement.com | 11/18/15 | 11/18/20 | |
| gargoylemanagementinc.com | 11/18/15 | 11/18/20 | |
| selfstorageoflubbock.com | 2/19/04 | 2/19/19 | |
| lubbockboatandrvstorage.com | 6/19/12 | 6/19/22 | |
| lubbockboatsstorage.com | 6/19/12 | 6/19/18 | |
| lubbockrvstorage.com | 6/19/12 | 6/19/22 | |

## NETWORK SOLUTIONS

| USERNAME: postar@door.net   PASSWORD: #1Storage | | | | |
|---|---|---|---|---|
| Domain Name | Account No. | Points To | Auto Renew | Expiration Date |
| affordablestoragemidland.co | 31890175 | Under Construction Page | On | 2/8/21 |
| affordablestoragemidland.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 6/23/18 |
| affordablestorageofsanangelo.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 2/11/20 |
| affordablestoragesanangelo.co | 31890175 | Under Construction Page | On | 2/8/21 |
| affordablestoragesanangelo.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 8/15/18 |
| affordablestoragesherwoodway.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 11/8/17 |
| affordablestoragesouthlandblvd.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 11/8/17 |
| affordablestoragethomasondrive.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 11/8/17 |
| apiusmidlandstorage.com | 31890175 | ADNS Services | On | 4/27/21 |
| midlandstorage.co | 31890175 | Under Construction Page | On | 2/8/21 |
| sanangelostorage.co | 31890175 | Under Construction Page | On | 2/8/21 |
| storagemidland.co | 31890175 | Under Construction Page | On | 2/8/21 |
| storagemidland.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 1/11/18 |
| storagemidland.info | 31890175 | Under Construction Page | On | 4/3/18 |
| storagesanangelo.co | 31890175 | Under Construction Page | On | 2/8/21 |
| storagesanangelo.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 1/11/18 |
| storagetodaysanangelo.com | 31890175 | ADNS Services | On | 4/19/20 |
| lowcoststoragelubbock.co | 31890175 | Under Construction Page | On | 2/8/21 |
| lubbockstorage.co | 31890175 | Under Construction Page | On | 2/8/21 |
| selfstorageinlubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 5/29/18 |
| selfstoragelubbock.co | 31890175 | Under Construction Page | On | 2/8/21 |
| storageinlubbock.com | 31890175 | ns1.ipower.com \| ns2.ipower.com | On | 5/29/18 |
| storagelubbock.co | 31890175 | Under Construction Page | On | 2/8/21 |

D.P.

1

In the Matter of the Arbitration between

DAVID POSTAR,
Individually and as authorized representative of
all entities of which he has a controlling interest,
        *Claimant,*

vs

MICHAEL POSTAR,
Individually and as authorized representative of
all entities of which he has a controlling interest,
        *Respondent.*

# ARBITRATION AWARD

## BACKGROUND AND STATEMENT OF THE CASE

1.    Since their split-up, David Postar and/or his related entities (hereafter collectively "David") has sought trademark protection for three marks (collectively the "Marks"): (1) "Little Joey" (a smiling "box" character, typically brown in color, although in both the state and federal trademark applications color was a not a claimed feature of the mark, and with facial features, arms, legs, gloved hands, and feet) (hereinafter the "Little Joey mark"); (2) "Smiley" (a smiley face character, typically yellow in color, although in both the state and federal trademark applications color was a not a claimed feature of the mark, and with arms, legs, hands, and feet) (hereinafter the "Smiley mark"); and (3) "Discount Storage," coupled with Little Joey (the "Discount Storage mark"). Copies of the Marks are depicted in Exhibit A attached hereto. David has obtained state trademark protection in Texas for the Marks and has obtained federal copyright protection for the Little Joey mark, all of which may or may not be subject to further challenge under applicable trademark and copyright law.  Federal trademark protection for the Marks is pending and may or may not issue and may be subject to objection or further challenge.

1

EXHIBIT

B

2.      David asserts, *inter alia*, that the Marks were newly created intellectual property and, as such, Michael Postar and/or his related entities (hereinafter collectively "Michael") have no rights with respect to the Marks and are fully subject to whatever rights David has or may obtain under state or federal trademark or copyright law with respect to the Marks.   Michael asserts that he has prior rights in connection with the Marks based on his prior usage and/or that the Marks are sufficiently similar to or constitute prior marks and intellectual property that David and Michael jointly used prior to their split up as to come within the scope of the August 2018 mediation agreements and related documents entered between David and Michael to effectuate their split up. These "split up" agreements and related documents contractually addressed the post-split up use of certain marks and the intellectual property used by David and Michael pre-split up.

3.      Michael asserts, *inter alia,* that David should be required to assign to Postar IP any trademark or copyright rights or protection David has or may acquire with respect to the Smiley mark and the Little Joey mark based upon their claimed joint prior use of those marks or substantially similar marks and intellectual property, as well as the mediation agreements and related documents and their intent when they entered into those agreements in connection with the split up of their business activities and affairs.  Michael does not appear to claim any rights as between him and David with respect to the Discount Storage mark, except perhaps to the extent it incorporates or uses the Little Joey mark.

4.      Accordingly, this arbitration raises the following issues:

        a.      As between David and Michael and their respective entities, who, if anyone, has the exclusive right or non-exclusive right to use and develop the Smiley mark and all other derivations or iterations of the Smiley mark in connection with the storage business, and to what geographic areas do those rights apply?

2

b.      As between David and Michael and their respective entities, who, if anyone, has the exclusive right or non-exclusive right to use and develop the Little Joey mark in connection with the storage business, and to what geographic areas do those rights apply?

c.      Does the use by David or Michael and/or their respective entities of the Smiley mark in various geographic areas in connection with the storage business infringe on the Smiley mark rights of the other and, if so, in what geographic areas?

d.      Does the use by David or Michael and/or their respective entities of the Little Joey mark in various geographic areas in connection with the storage business infringe on the Little Joey rights of the other and, if so, in what geographic areas?

e.      What is the appropriate relief available, under applicable law, to vindicate the parties' rights with respect to the Marks as found by the Arbitrator.

f.      David also complains that Michael copied or stole David's seasonal, holiday, or other themed marketing ideas which David used with the Smiley mark on Facebook or other social media, in particular the Smiley person iteration of the Smiley mark, and asks that the Arbitrator prohibit Michael from doing so in the future.

5.      David and Michael have agreed to submit the above disputes set forth in sub-paragraphs 3 (a) through (e) to me as the sole Arbitrator pursuant to the agreed Pre-Arbitration Procedure Order dated October 3, 2018, attached hereto as Exhibit B and in accordance with the mediation agreements and related documents previously reached between David and Michael regarding the split up of their business ventures.

6.      With respect to the matters raised in sub-paragraph 3(f), above, David has affirmatively submitted these issues to the Arbitrator and asked for relief in this proceeding as to such matters. Michael has not objected to the Arbitrator determining these matters and has affirmatively joined issue with respect to the relief requested by David in connection with the alleged improper copying of David's themed, holiday or seasonal social media advertising. Accordingly, the Arbitrator will address this issue in limited respects as set forth in this Award.

7.     A hearing with live testimony was held before the Arbitrator on October 3, 2018. Both David and Michael testified on direct and were subject to cross-examination. Both sides had a full opportunity to present such witnesses and evidence as they deemed appropriate. Both sides submitted initial briefing and related documents on November 1, 2018. Both sides submitted further responsive briefing and related documents on November 16, 2018. Neither party has requested the opportunity to submit further briefing. The Arbitrator declared the case fully submitted as of November 21, 2018 and it is now ripe for determination.

## PRELIMINARY MATTERS

8.     David has objected to certain evidence submitted by Michael after the hearing, (the "supplemental Exhibits" or "supplemental evidence") asserting that the evidence was closed and that there is a serious question of the date of the events depicted in the photographic images contained in such evidence. Michael has withdrawn supplemental Exhibit DDD, although it appears that he meant to withdraw supplemental Exhibits BBB and CCC (photographs of the Mud Volleyball Tournament). The Arbitrator will deem Michael's supplemental Exhibits BBB and CCC withdrawn. David's remaining objections are to Michael's supplemental Exhibit AAA (a business publication profile of Michael); Exhibit DDD (claimed public domain "box figure clip art" asserted to have been merely copied by David to supposedly "create" Little Joey); Exhibit EEE (a printed screenshot of a Self-Storage of Lubbock web page); and Exhibits FFF and GGG (Michael's supplemental evidence of his costs and attorneys' fees in connection with these matters). David's remaining evidentiary objections are overruled and/or are moot because the Arbitrator's decision would be the same irrespective of whether or not such evidence was considered and thus its admission or non-admission would not affect this Award. Michael's objection to and motion to strike the contents of David's initial briefing after page 20 is similarly

4

overruled. All parties have had a most fulsome opportunity to present their legal and factual arguments and their view of the case.

9.      This Award will address the contractual and related rights as between David and Michael[1] with respect to the use of the Marks in connection with the storage business as well as, to a limited degree, the issues surrounding the claimed improper copying by Michael of David's seasonal, holiday, or themed marketing referenced in sub-paragraph 3(f) , above.  Specifically, as to the former, the Award will address whether Michael contractually has the right/license to use some or all of the Marks in connection with the storage business, whether exclusively or non-exclusively, in certain geographic areas notwithstanding David's existing or pending state or federal trademark or copyright registration(s) or similar rights with respect to the Marks. Additionally, this Award will address whether David or Michael are contractually and otherwise limited in their respective use of some or all of the Marks, whether exclusively or non-exclusively, in certain geographic areas notwithstanding David's existing or pending state and/or federal trademark or copyright registration(s) and notwithstanding the grant, denial, or lack of legal challenge to those registrations or rights thereunder in the future. While the "Affordable Storage" and A-Plus names were addressed in the mediation "split up" documents, there does not appear to be a current or live dispute regarding the parties' rights with respect to the post-split up use of those marks, except perhaps in connection with internet or social media marketing. Accordingly, the Arbitrator will address those marks only as to social media marketing issues at this time but reserves jurisdiction to address future disputes with respect to these marks if they should arise.

---

[1] As noted, any reference to "David" or "Michael" in this Award refers to each of them individually and the respective related entities now in existence or which may come into existence in which they have a controlling interest, directly or indirectly.

**DETERMINATION OF THE CASE**

Request for Assignment of the Marks to Postar IP

10.    The Arbitrator concludes that it would not be appropriate, even if he had the power to do so, to require David to assign to Postar IP the statutory trademarks or copyright David may have or acquire hereafter with respect to the Marks.  Accordingly, nothing in this Award shall be construed to require David to assign or transfer to Postar IP any copyright or trademarks with respect to the Marks.[2]

11.    The Arbitrator concludes that it would not be appropriate, even if he had the power to do so, to invalidate or opine on the validity or invalidity of any state or federal trademark or federal copyright application, registration, rights or the like which has issued or may issue in the future with respect to the Marks.  Accordingly, nothing in this Award shall be construed to constitute a declaration of validity or of invalidity of any copyright or federal or state trademark registration which has issued or may issue in the future with respect to the Marks.  Conversely, nothing in this Award shall be construed as limiting Michael's ability to challenge any federal or state trademark or copyright application or registration or related rights

---

[2] David may voluntarily decide to assign the Smiley mark trademark rights to Postar IP since such an assignment will not expand Michael's use rights or narrow David's use rights under this Award with respect to the Smiley mark. See Award, Pars. 16-19. Thus an assignment to Postar IP or lack thereof may have little practical consequences with respect to David's or Michael's use of the Smiley mark. Similarly, there may be little actual utility in Michael challenging any federal or state trademark protection David seeks with respect to the Smiley mark because Michael's permitted scope of use of the Smiley mark under this Award (effectively a *de facto* "license" to Michael in his exclusive and non-exclusive geographic areas and a prohibition in David's areas) will neither expand nor narrow irrespective of the outcome of any challenge by Michael to the trademark protection which has been or may be granted to David with respect to the Smiley mark. See Award, Pars. 16-19. Since Michael's rights to use the Smiley mark will effectively be the same under this Award as he would have if the Smiley mark trademarks were assigned to Postar IP, it may be in the interest of both David and Michael for the trademark protections sought by David with respect to the Smiley mark (whether assigned to Postar IP or not) to be validated to provide protection against unrelated third party use of the Smiley mark in connection with the storage business.

with respect to the Smiley mark or the Little Joey mark or the Discount Storage mark.[3]  Of course, certain of the findings, determinations, and rulings in this Award could impact the likelihood of success or failure of a trademark challenge to a particular Mark based upon the doctrine of collateral estoppel or the like.

### The Little Joey and Discount Storage Marks

12.     Michael claims that the Little Joey mark is sufficiently similar to the Smiley mark used by Michael and David prior to their split up that it is part of their joint intellectual property and David cannot thereafter acquire any different, superior, or inconsistent rights with respect to the Little Joey mark than he could with respect to the Smiley mark.  Michael essentially asserts that the Little Joey is so closely derivative of and/or confusing with the Smiley mark it should be treated as one and the same.

13.     The Arbitrator notes the considerable differences between the Smiley mark on the one hand and the Little Joey mark on the other hand. Among these differences:  (a) a round versus a square figure; (b) in connection with the print images, primarily a two dimension depiction versus a three dimension depiction; (c) single black "dots" for eyes versus full open, asymmetrical large eyes, eye whites, and "reflective" pupils; (d) a single thin line for a smile versus a full open mouth, tongue and teeth; (e) no nose versus a stylized curved nose; (f) no eyebrows versus stylized eyebrows; (g) no chin feature versus a small chin "dimple"; and (h) historically using different colors for the "body" of the characters – yellow versus  brown/tan. On their face, the Smiley mark and the Little Joey mark are dissimilar in look, feel, and

---

[3] As observed in Note 2, above, in light of this Award, it may be in both Michael's and David's interest not to have a challenge to David's trademark filings with respect to the Smiley mark. Similarly, there appears to be little value to Michael of challenging the Little Joey and Discount Storage marks and Michael may voluntarily decide not to do so. It does not appear that Michael desires or plans to use the Little Joey or Discount Storage marks. Even a successful challenge by Michael to David's trademark and copyright applications with respect to the Little Joey and Discount Storage marks will not affirmatively prevent David from using the Little Joey or Discount Storage marks (David would merely not have exclusive trademark rights) nor does anything in this Award do so. See Award, Pars. 12-15.

appearance as historically depicted and used. Moreover, there was little or no objective or statistical evidence of confusion between the two marks.

14.     The Arbitrator determines that Little Joey mark and the Discount Storage mark (whether or not coupled with the Little Joey mark) are sufficiently distinguishable from and were not part of the intellectual property, marketing assets, and the like used by Michael's and David's joint business enterprise or activities pre-split up and are not fairly encompassed by the mediation agreements and related documents or the fair intent and expectations of the parties.

15.     Accordingly, the Arbitrator determines that Michael has no contractual or similar rights with respect to the use of the Little Joey mark or the Discount Storage mark (whether combined with the Little Joey mark or used independently) based upon pre-split up activities or the mediation agreements and related documents entered into by Michael and David to effectuate their business split up.  Therefore, no claimed contractual rights or other claimed prior pre-split up use of an allegedly similar mark or intellectual property by Michael or Michael and David jointly shall constitute a defense to or *de facto* license which may be asserted by Michael with respect to any rights which David may have or may obtain hereafter as a result of any federal or state trademark or any federal copyright of the Little Joey or Discount Storage marks which have issued or may issue in the future.  For purposes of clarity, the Arbitrator similarly and conversely notes that no contractual or other prior use by David or by David and/or Michael's joint enterprise or activities of any marks or intellectual property prior to their split up provided David with any other contractual or similar rights to the Little Joey or Discount Storage marks as between Michael and David. Whatever rights David has with respect to the Little Joey or Discount Storage marks are those rights which David obtains as a result of federal or state trademark or copyright protection or common law rights post-split up.

8

The Smiley Mark

16.     The Arbitrator reaches a different conclusion with respect to the Smiley mark. Based on the evidence submitted, the Arbitrator determines that the intellectual property, marketing assets, and the like used by Michael and David joint business enterprise or activities pre-split up includes the Smiley mark and that the Smiley mark is fairly encompassed by the mediation agreements, related documents, and the fair intent and expectations of the parties in connection with those agreements and documents. As noted hereafter, irrespective of and notwithstanding any trademark or copyright protection or common law rights David obtains with respect to the Smiley mark post-split up, Michael retains certain contractual and related rights to use the Smiley mark based upon pre-split up activity and the mediation agreements and related documents entered into between Michael and David to effectuate their business split up.

17.     Specifically, as between David and Michael and irrespective of and notwithstanding David's federal and/or state trademark and copyright applications, registrations, protections or rights thereunder or any common law or other rights that David may have or assert with respect to the Smiley mark,  Michael contractually and otherwise has the exclusive rights as between Michael and David to use the Smiley mark or any iterations thereof in Lubbock County, Texas, in connection with the storage business.  For purposes of clarity and the avoidance of doubt, the "Smiley mark" and its iterations include the classic Smiley face, a Smiley face with a crown, a Smiley face with appendages (hands or arms), or the "Smiley person" (a Smiley face with arms, legs, gloved or un-gloved hands, and feet, etc.), and substantially similar depictions or iterations of the foregoing irrespective of the color used. While the Smiley mark has historically been yellow, in determining and vindicating the parties' rights under this Award, the Smiley mark is not limited to a yellow color.  Finally, for purposes of further clarity, David's use of the brown Little Joey mark with a tan "tape" strip or iterations thereof in Lubbock County, Texas or

9

anywhere else does *__not__* constitute the use by David of a mark substantially similar to the Smiley mark and does not violate Michael's contractual or similar Smiley mark rights under this Award.[4]

    18.    The Arbitrator determines that, irrespective of any challenge (whether successful or unsuccessful) by Michael to David's federal and/or state trademark and copyright applications, registrations, protections or rights thereunder or any common law or other rights Michael may assert, that David contractually and otherwise has the exclusive rights as between David and Michael to use the Smiley mark and its iterations in Midland County, Texas and Tom Green County, Texas, in connection with the storage business.

    19.    The Arbitrator determines that, irrespective of David's federal and/or state trademark and copyright applications, registrations, protections, or rights thereunder and irrespective of any challenge (whether successful or unsuccessful) by Michael to David's federal and state trademark and copyright applications and registrations and irrespective of any common law or other rights that David or Michael may assert, that David and Michael contractually and otherwise as to one another both have the non-exclusive rights to use the Smiley mark or iterations thereof (including, without limitation, the classic Smiley face, a Smiley face with a crown, a Smiley face with appendages, or the Smiley person) anywhere other than in Lubbock County (which is exclusive to Michael), and in Midland County and Tom Green County, Texas (which are exclusive to David), in connection with the storage business.

---

[4] Since the issue has not arisen, the Arbitrator need not consider at this time whether a use by David in Michael's exclusive Smiley mark area (Lubbock County) of a Little Joey mark utilizing the classic yellow or a similar color typically/historically associated with the Smiley mark (rather than the brown color with tan "tape" strip heretofore used by David in connection with the Little Joey mark) would violate Michael's Smiley mark rights under this Award. While the Arbitrator retains jurisdiction to decide any such dispute, he is hopeful that the issue never arises and that he, David, and Michael are spared that journey.

Internet and Social Media Marketing and Advertising

20.     David and Michael shall attempt in good faith to agree on methodologies and technical protocols (including using appropriate HTML coding or other coding or other programming language, or the like) for the use of social media or internet advertising and marketing such that they are not targeting or permitting advertisements or marketing using the Smiley mark or iterations thereof or the other marks subject to geographic exclusivity (Affordable Storage or A-Plus Storage) by entities in or directed at the geographic areas where the other has exclusive rights to use such marks.

Prophylactic Measures in Connection with the Parties' Smiley Mark Rights

21.     For purposes of clarity, avoidance of further conflict or disputes, and to forestall and prevent any attempts to "end run" the rights set forth in this Award, the Arbitrator further rules as follows. David's and Michael's contractual and related rights under this Award (whether exclusive or non-exclusive depending on the geographic area) with respect to the Smiley mark and any iterations thereof as set forth in this Award shall not be licensable or sub-licensable to unrelated third parties. Similarly David's and Michael's contractual and related rights under this Award with respect to the Smiley mark and any iterations thereof are not transferable to an unrelated third party except in connection with the sale by David or Michael, as applicable, of substantially all of their storage business. In connection with any transfer of such rights (whether by a stock or entity sale or an asset sale) as a condition to such transfer of the rights under this Award the third party transferee must contractually covenant and agree in writing to be bound by this Award and recognize and agree to be bound by the rights and limitations set forth in this Award with respect to the Smiley mark and any iterations thereof and acknowledge that David (in the event of such sale or transfer by Michael) or Michael (in the event of such sale or transfer by David) are intended third-party beneficiaries of such covenant and agreement.

11

22.     Similarly, to the extent David has or obtains any state, federal, or common law trademark or copyright rights with respect to the Smiley mark or any iterations thereof, any license, sub-license, or transfer thereof by David shall specifically be made subject to Michael's rights with respect to the Smiley mark or any iterations thereof as set forth in this Award and Michael shall be referenced in the documents effectuating any such license, sub-license, or transfer as an intended third-party beneficiary of such license, sub-license, or transfer agreement(s) with the ability to enforce/vindicate his rights under this Award as to any such licensee, sub-licensee, or transferee.

<u>Seasonal or Themed Marketing and Advertising</u>

23.     David also complains that Michael copied or stole David's seasonal, holiday or other themed marketing ideas which David used with the Smiley mark on Facebook or other social media, and asks that the Arbitrator prohibit Michael from continuing to do so.  These marketing ideas include such things as (a) a green hat, facial hair or sunglasses on a Smiley person (in connection with St. Patrick's day); (b) American flag themed hats or the like (in connection with national holidays); (c) "Red Raiders" themed caps and colors on a Smiley person (in connection with Texas Tech events or targeted marketing); (d) a Smiley person with a broom (in connection with "spring cleaning"); and (e) a Smiley person with a bow tie and glasses (in connection with "back to school").  David requests that the Arbitrator prohibit Michael from copying David's themed advertising in the future, in particular, the seasonal, holiday, and themed marketing and advertising of a similar kind and nature to that referenced above.  The Arbitrator declines to do so.

24.     There was little or no evidence that specific iterations or depictions of seasonal or themed marketing or advertising were utilized pre-split up by the jointly owned business endeavor. Moreover, if any protectable specific iterations or depictions of themed marketing or

12

advertising were used pre-split up, they would arguably be within the scope of the intellectual property encompassed by the mediation "split up" agreements and related documents between David and Michael.  Accordingly, any rights which David claims were violated by Michael's "copying" of David's newly created seasonal, holiday, or themed advertising about which David now complains presumably arose post-split up.  While disputes regarding such matters may not have initially been within the scope of this arbitration, both parties have submitted this issue to the Arbitrator and the Arbitrator will address that issue in limited respects.

25.    David has not established in this proceeding any statutory, contractual, or common law rights as between David and Michael with respect to the **ideas** underlying the seasonal, holiday, or themed marketing and advertising.   There was no evidence of any trademark (statutory or common law) or copyright protection regarding any specific iteration or depiction of seasonal, holiday, or themed marketing, and it is far from clear that the **ideas and concepts** (such as seasonal, holiday, or themed characters or backgrounds and the use of hats, attire, or scenery, beards, etc.) in connection with such advertising (as opposed to specific iterations or images) could be trademarked or the subject of copyright or other intellectual property protection.

26.    Any request for an injunction or other relief with respect to copying seasonal, holiday, or themed marketing or imagery would presumably have to be analyzed on a case by case basis to determine (a) whether a particular iteration or depiction was both protectable and was actually protected and, if so, (b) whether the particular complained of activity violated those protected rights. A broad injunction against "copying" any sort of future seasonal, holiday, or themed advertising in general would be legally overbroad in a number of respects. It would involve seasonal, holiday, or themed marketing or advertising and the like which is not yet even in existence and whose design, artistic, and other attributes and legal status are unknown at this

time. It would thus result in a situation where it was likely impossible at the time the injunction issued to determine where the line lays between prohibited conduct and non-prohibited conduct. It would almost certainly lead to further litigation, contempt motions, and the like as to whether the particular future (and as yet unconceived) seasonal, holiday, or themed marketing or advertising claimed to have been improperly copied was protectable; what minimum nature, level, or degree of similarity or other characteristics constitutes the prohibited "copying"; and whether the future (and as yet unknown) complained of activity crossed that line. In short, a general injunction against potential future activities which are claimed to infringe unknown future marketing iterations or images is legally unwarranted, functionally unenforceable, and unworkable in the real world.

27.    Accordingly, the Arbitrator will not order/enjoin Michael to refrain from "copying" the ideas or concepts or underlying David's seasonal, holiday, or themed advertising or from "copying" particular iterations of such advertising or marketing.    However, the Arbitrator is not giving affirmative permission, blessing or license to Michael to copy or use such ideas or concepts or particular iterations thereof.    Rather, the Arbitrator will leave that fight, if it is truly necessary to have in the future, to another day and, perhaps, another forum. For purposes of clarity and the avoidance of doubt, the Arbitrator's "decision" regarding the themed or seasonal "copying" issue(s) is "without prejudice".    If David believes he has enforceable and protectable intellectual property rights or the like with respect to particular seasonal, holiday, or themed advertising and specific marketing, advertising, images, iterations, or depictions used in the future and that Michael has violated those rights, he can pursue those rights and claims,

presumably on a case by case basis, and Michael can defend against such claims.[5] Those fights, as unfortunate, economically unrewarding, and otherwise unsatisfying as they would likely be, are for another day.

Attorneys' Fees and Costs

28.     Both Michael and David have requested that their attorneys' fees and costs should be awarded against the other. Both Michael and David assert that the other has breached the mediation "split up" agreements and acted in bad faith or the like and, on the other hand, they have fully complied with those agreements and acted in utmost good faith and with intellectual rigor. Both parties prevailed on certain issues presented to the Arbitrator and, conversely, both parties did not prevail/lost on other issues. The Arbitrator determines that it is fair, just, and proper that David and Michael each bear their own attorney's fees and costs, as well as the arbitration fees and costs (including leaving in place the travel related "expense equalizing" payment ordered by the Arbitrator in connection with the locale of the hearing) incurred and paid to date in connection with the matters that were the subject of this arbitration. This same conclusion may not necessarily be appropriate in connection with future reasonable and necessary attorney's fees and costs incurred by a party because the other party did not materially comply with the terms of this Award. Accordingly, the Arbitrator also reserves jurisdiction as to such matters.

CONTINUING JURISDICTION

29.     The above determinations and declarations by the Arbitrator should provide sufficient clarity such that David and Michael understand their rights with respect to the Marks and will abide by those determinations.  Accordingly, the Arbitrator will not issue any further

---

[5] In light of the parties' rights with respect to the Smiley mark as set forth in this Award, these "themed marketing copying" disputes may well be less likely. Indeed, with a modicum of mutual civility and communication such disputes (and perhaps other potential disputes) might very well be minimized or eliminated going forward.

relief in the nature of an injunction or otherwise at this time. However, the Arbitrator retains jurisdiction to issue appropriate further relief if necessary, to correct errors in the Award, to clarify this Award, and to otherwise enforce, effectuate and implement this Award but most earnestly hopes that he will not be required to do so.

## OTHER MATTERS

30. Although somewhat beyond his charge, the Arbitrator would again note to both David and Michael that life is exceedingly short; that little is more important than family; and that it is within the power of each of them to choose how to live[6].

DATED: December 11, 2018

## IT IS SO AWARDED AND ORDERED

Christopher Nolland, Sole Arbitrator

---

[6] **The Wolf That Wins**

One evening an old Cherokee Indian told his grandson about a "battle" that goes on inside people.

He said, "My son, the battle is between 2 "wolves" inside us all.

One is Evil. It is anger, envy, sorrow, regret, greed, arrogance, self-pity, guilt, resentment, inferiority, lies, false pride, superiority, and ego.

The other is Good. It is joy, peace, love, hope, serenity, humility, kindness, benevolence, empathy, generosity, truth, compassion, faith and above all forgiveness."

The grandson thought about it for a minute and then asked his grandfather: "Which wolf wins?"

The old Cherokee simply replied, "The one you feed."

16

# Exhibit A

In the Matter of the Arbitration between

DAVID POSTAR,
Individually and as authorized representative of
all entities of which he has a controlling interest,
        *Claimant,*

**vs**

MICHAEL POSTAR,
Individually and as authorized representative of
all entities of which he has a controlling interest,
        *Respondent.*

## PRE-ARBITRATION PROCEDURE ORDER

Since their split-up a dispute has arisen between David Postar (hereafter David) and Michael Postar (hereafter Michael) regarding rights and use of two marks: (1) "Little Joey" (a smiling box character) (hereafter "Little Joey"), and (2) "Smiley" (a smiley face character with arms and legs) (hereafter "Smiley").

The parties have agreed to submit the following disputes to the Arbitrator for hearing and determination:

Accordingly, the Arbitrator ORDERS as follows:

1. This intellectual property dispute raises five (5) issues:

    a. As between David and Michael and their respective entities, who, if anyone, has the exclusive right to use and develop the "Smiley" mark and all other derivations of this mark used in the storage business, and to what geographic areas do those rights apply?

    b. As between David and Michael and their respective entities, who, if anyone, has the exclusive right to use and develop the "Little Joey" mark, and to what geographic areas do those rights apply?

    c. Does use by David or Michael of the "Smiley" mark infringe on the "Smiley" rights of the other regarding the marks, and if so, in what geographic areas?

1

    d. Does use by David or Michael and/or their respective entities of the "Little Joey" mark infringe on the "Little Joey" rights of the other regarding the marks, and if so, in what geographic areas?

    e. What is the appropriate relief available, under applicable law, if infringement is found to vindicate the parties' rights as determined by the Arbitrator?

2. The parties agree to submit to the Arbitrator all of the above issues and any reasonably related issues.

3. Accordingly, on October 3 (and 4 as needed), 2018, and at other times and manner as the Arbitrator may direct, David and Michael shall submit any evidence on the above issues for my consideration and ruling, pursuant to the terms that the Arbitrator has previously set forth in prior correspondence to the Parties.

4. Michael and David shall each bear the burden of proof as to their respective positions pertaining to the development, registration, use, rights and infringement regarding "Smiley" and "Little Joey." The party claiming invalidity, including claims of prior use or derivation, shall have the burden of proof on that claim.

5. Pretrial exhibit exchanges are due no later than noon on Monday, October 1, 2018.

6. The Arbitrator shall issue an Award after the hearing and any post-hearing submissions which Arbitrator may request from the parties. The hearing will not be deemed concluded until after Arbitrator receives any post-hearing submissions. The Award shall be issued in such form and manner as the Arbitrator may determine.

7. Each side can deliver an opening statement of no more than ten (10) minutes.

8. The parties agree that any transcript of these proceedings shall be confidential and not be used outside of these proceedings or provided to any third-party to this arbitration.

DATED: October 3 , 2018

Christopher Nolland, Sole Arbitrator

**AGREED AS TO FORM AND SUBSTANCE:**

Michael Postar, Individually and as authorized representative
of all entities of which he has a controlling interest

By: _____

Fernando M. Bustos; SBN: 24001819
fbustos@bustoslawfirm.com
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX
ATTORNEYS FOR MICHAEL POSTAR, ET AL.

**AGREED AS TO FORM AND SUBSTANCE:**

David Postar, Individually and as authorized representative
of all entities of which he has a controlling interest

By: _____

John T. Cox III; SBN: 24003722
tcox@lynnllp.com
Edward Jason Dennis; SBN: 24045776
jdennis@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
ATTORNEYS FOR DAVID POSTAR, ET AL.

3

# Exhibit B



**Little Joey mark**



**Smiley mark**



**Discount Storage mark**

In the Matter of the Arbitration between

DAVID POSTAR,
Individually and as authorized representative of
all entities of which he has a controlling interest,
               *Claimant,*

vs

MICHAEL POSTAR,
Individually and as authorized representative of
all entities of which he has a controlling interest,
               *Respondent.*

# <u>ARBITRATION AWARD</u>

### BACKGROUND AND STATEMENT OF THE CASE

1.     This matter involves further disputes (the "Disputes") between Michael Postar and David Postar and their related entities (each collectively "Michael" and "David", respectively). The undersigned previously arbitrated a series of disputes between Michael and David pursuant to the submission of the parties and an arbitration agreement contained in the settlement documents resulting from a mediation (the "Split Up Mediation") in which Michael and David resolved various disputes relating to their self-storage business and other business interests. As a result of the Split Up Mediation, Michael and David attempted to largely "split up" their various business interests and affairs (the "Split Up") and executed certain settlement documents (the "Split Up Documents") to largely effectuate such Split Up.

2.     The undersigned issued a prior Arbitration Award on or about December 11, 2018 to address disputes which arose subsequent to the Split Up (the "2018 Arbitration Award"). The 2018 Arbitration Award addressed and resolved a number of trademark related issues and other disputes as between David and Michael.

1

**EXHIBIT
C**

3.    The latest disputes between Michael and David (the "Disputes") involve the following issues:

a) David's registration of the domain name "aplusstoragelubbock.com" shortly before the Split Up Mediation and thereafter going "live" with that domain name. Michael asserts that David's ownership and/or use of such a domain name violates Michael's rights because Michael was allocated the APlus Storage name for Lubbock County in the Split Up Documents.

b) David's registration of the domain name "discountstoragelubbock.com" shortly before the Split Up Mediation. Michael asserts that domain name should be the joint property of both David and Michael or owned by their jointly owned entity, Postar IP, since the domain name was obtained by David before the Split Up.

c) David or his entities use of a truck/SUV in Lubbock County with signage with the "Affordable Storage" name and "Midland", "Odessa", and "Lubbock" references together with David's Midland business phone number and various iterations of the above. Michael contends that David's use of such signage on a truck/SUV located in Lubbock County and to the extent the words "Lubbock" and "Affordable" (or an iteration thereof) are used together on the same truck no matter where located, violates Michaels rights under the Split Up Documents. and

d) Entitlement to attorneys' fees and expenses in connection with the above Disputes and this arbitration proceeding and the related pre-arbitration mediation and the amount of such attorneys' fees and expenses to be awarded.

2

4.     David and Michael have agreed to submit the disputes set forth in sub-paragraphs 2 (a), (c), and (d) to me as the sole Arbitrator pursuant to the arbitration provisions in the Split Up Documents. Michael has also submitted the dispute set forth in sub-paragraph (b), above, pursuant to the arbitration provisions in the Split Up Documents and David has contested or suggested that such Dispute is not within the arbitration provisions in the Split Up Documents. The Arbitrator finds that all of the Disputes are within the arbitration provisions in the Split Up Documents and the Arbitrator has jurisdiction of all of the Disputes set forth in sub-paragraphs 2 (a), (b), (c) and (d), above and overrules David's objection or suggestion to the contrary with respect to the Dispute referenced in sub-paragraph 2(b) regarding David's registration of the domain name "discountstoragelubbock.com".

5.     The parties through their counsel made written submissions with respect to the Disputes, including submission by Michael of invoices for his attorneys' fees and a supporting affidavit of counsel regarding same. By agreement of the parties, a hearing limited to argument of counsel and without live testimony was held by Zoom on February 6, 2023. The parties through counsel were provided the opportunity thereafter to submit case law or other legal authority regarding issues discussed at the hearing. No party requested an opportunity to present evidence other than the written submissions and documents proffered by counsel. Both Michael and David through counsel agreed that the Arbitrator could issue a Simple Award, containing only such explanation or reasoning as the Arbitrator thought appropriate. The disputes are now ripe for determination by the Arbitrator. This Award will address the contractual and related

3

rights as between David and Michael[1] with respect to the Disputes, the appropriate relief, and other matters the Arbitrator believes are necessary to fully address and resolve the Disputes.

## DETERMINATION OF THE CASE

### a) David's pre-Split Up registration and subsequent use of the domain name "aplusstoragelubbock.com"

6.      As a preliminary matter, the Arbitrator overrules/rejects David's assertion that Michaels' claims regarding the "aplusstoragelubbock.com" domain name are barred by the Statute of Limitations, both under principles of equity and fairness and related doctrines of continuing violation and the discovery rule.

7.      The Arbitrator concludes that David's registration of the domain name "aplusstoragelubbock.com" shortly before the Split Up Mediation was not, in and of itself, wrongful. While it may have been "bad form" to not have disclosed such registration at the Split Up Mediation, the Arbitrator is not prepared to conclude that such non-disclosure, whether before or after the execution of the Split Up Documents, violated any legal duties owed to Michael. However, it appears that at some point David went "live" with the "aplusstoragelubbock.com" domain and created a so-called "landing page". Although it appears that such actions were relatively modest or perhaps even *de minimis,* they constituted a violation or breach by David of Michael's rights under the Split Up Documents. Accordingly, the issue is the relief to which Michael is entitled.

8.      Michael has not argued for and has not submitted any evidence of actual monetary damages resulting from David's going live with the "aplusstoragelubbock.com"

---

[1] Any reference to "David" or "Michael" in this Award refers to each of them individually and the respective related entities now in existence or which may come into existence in which they have a controlling interest, directly or indirectly.

domain name. As previously stated to the parties and their counsel, the Arbitrators concludes it is not appropriate to award any so-called "penalty" or exemplary damages for any such breach. Accordingly, any claim by Michael for damages or monetary payment for any of David's past use of the "aplusstoragelubbock.com" domain is denied with prejudice. However, the Arbitrator concludes that the appropriate relief in order to remedy the foregoing is to direct David to assign to Michael or his designee the "aplusstoragelubbock.com" domain name and to promptly (and presumptively within thirty (30) days from the date of this Award) take all such steps necessary with the domain name registrar and to cooperate with Michael (or if need be through his designated agent or counsel) to transfer the domain registration for the "aplusstoragelubbock.com" domain to Michael or such entity as Michael may designate. David shall pay to the appropriate domain registrar all of the domain registration transfer fee(s), but the parties shall each otherwise bear their other costs (internal time, technical consultants, employee time, attorney's fees, or the like) in connection with such transfer of the "aplusstoragelubbock.com" domain to Michael. The Arbitrator expects all parties to act in good faith to accomplish the foregoing as promptly, efficiently, and inexpensively as possible. Michaels request for attorneys' fees in connection with the foregoing is addressed in Paragraphs 15 - 20, below.

### b) David's pre-Split Up registration of the domain name "discountstoragelubbock.com"

9.     The Arbitrator concludes that David's registration of the domain name "discountstoragelubbock.com" shortly before the Split Up Mediation and David's use of that domain name thereafter was not wrongful and does not violate any legal duties owed to Michael or David's obligations under the Split Up Documents. The Arbitrator's reading of David's counsel's letter dated June 30, 2017 to Michael's counsel supports rather than undercuts David's

position that his actions and transactions after that date were for his own separate account and not the joint account of David and Michael. Moreover, with respect to the use of the Discount Storage mark (and its iterations) the Arbitrator previously ruled in the 2018 Arbitration Award as follows with respect to the Discount Storage mark:

> The Arbitrator determines that Little Joey mark and *the Discount Storage mark* (whether or not coupled with the Little Joey mark) are sufficiently distinguishable from and *were not part of the intellectual property, marketing assets, and the like used by Michael's and David's joint business enterprise or activities pre-split up* and are not fairly encompassed by the mediation agreements and related documents or the fair intent and expectations of the parties. (2018 Award Par. 14; emphasis added)

> Accordingly, *the Arbitrator determines that Michael has no contractual or similar rights with respect to the use of* the Little Joey mark or *the Discount Storage mark (whether combined with the Little Joey mark or used independently) based upon pre-split up activities or the mediation agreements and related documents entered into by Michael and David to effectuate their business split up.* Therefore, no claimed contractual rights or other claimed prior pre-split up use of an allegedly similar mark or intellectual property by Michael or Michael and David jointly shall constitute a defense to or *de facto* license which may be asserted by Michael with respect to any rights which David may have or may obtain hereafter as a result of any federal or state trademark or any federal copyright of the Little Joey or Discount Storage marks which have issued or may issue in the future. For purposes of clarity, the Arbitrator similarly and conversely notes that no contractual or other prior use by David or by David and/or Michael's joint

enterprise or activities of any marks or intellectual property prior to their split up provided David with any other contractual or similar rights to the Little Joey or Discount Storage marks as between Michael and David. Whatever rights David has with respect to the Little Joey or Discount Storage marks are those rights which David obtains as a result of federal or state trademark or copyright protection or common law rights post-split up. (2018 Award Par. 15; emphasis added)

10.     While the Arbitrator's decision would be the same even without the language from the 2018 Arbitration Award quoted above, the 2018 Arbitration Award further supports the Arbitrator's determination with respect to the "discountstoragelubbock.com" domain under settled principles of collateral estoppel. Accordingly, the Arbitrator rejects and denies Michaels's claim that David's registration, ownership, or use of the "discountstoragelubbock.com" domain name is wrongful or that it should be transferred to Postar IP or otherwise be jointly owned by Michael and David.

**c) David or his entities use of a truck/SUV in Lubbock County (and elsewhere) with signage with the "Affordable Storage" name and "Midland", "Odessa", and "Lubbock" references together with David's Midland business phone number and various iterations of the above**

11.     Under the Split Up Documents, as between Michael and David, Michael has the exclusive right to use the Affordable Storage name (and iterations thereof) with respect to Lubbock County and David has the exclusive rights to use the Affordable Storage name (and iterations thereof) with respect to Midland County and Tom Greene County. It appears that David, at least to some degree, has had a truck or SUV in Lubbock County with signage using the name "Affordable Storage" and showing its locations as "Midland", "San Angelo", and "Lubbock" and having a Midland phone number of "(432) 694-4444" displayed. During the

7

mediation regarding these most recent Disputes, David painted over the word "Lubbock" to address Michael's complaints regarding the truck. Michael's response is that such "paint over" is insufficient or worse, that David should not be able to advertise his Midland and San Angelo Affordable Storage business in Lubbock (that the SUV is essentially a moving billboard) , and that the haphazard and unsightly "paint over" of the Lubbock name reflects poorly on Michael's exclusive rights to use the Affordable Storage mark in the Lubbock market. David responds that there was no deliberate attempt to violate Michael's exclusive Affordable Storage mark in the Lubbock market, that David maintains his office in Lubbock, that the SUV was primarily simply parked at David's offices and not readily visible from the street, and that its presence in Lubbock was essentially for limited ingress and egress, intermittent, and *de minimis* in nature.

12.     While the nature and extent of the SUV's presence in Lubbock is not a matter of clarity, it was at least a technical violation of Michael's rights under the Split Up Documents. Under the Spit Up Documents David should not use the Affordable Storage name on any trucks/SUVS or other vehicles regularly located in Lubbock County nor should David use "Lubbock" in combination with the Affordable Storage mark (or its iterations) on any trucks/SUVS or other vehicles located anywhere as Michael has exclusive rights to use Affordable Storage in or with respect to advertising the Lubbock County market. Accordingly, David is directed to not purposely and regularly use the Affordable Storage mark (or iterations thereof) on any trucks/SUVS or other vehicles typically located physically in Lubbock County nor should David use the word "Lubbock" in combination with the "Affordable" mark (or iterations thereof) on any trucks/SUVS or other vehicles located anywhere and should "rewrap" or repaint his trucks/SUVS or other vehicles accordingly. Such repainting or "rewrapping should be completed no later than sixty (60) days from the date of this Award.

8

13.     The Arbitrator recognizes that there may irregular, intermittent or even accidental use in Lubbock of one of David's trucks/SUVS or other vehicles with the Affordable Storage name (or iterations thereof) displayed but expects that such events will be limited and in the event of such occasional or intermittent use that David shall use best reasonable efforts to keep any such SUV or truck from street view when parked. The Arbitrator expects David in good faith to comply with this directive and caution his employees and agents to do likewise.  Additionally, while the Arbitrator generally would not give advisory opinions, he notes that the same rules set forth above apply to Michael with respect to Midland County and Tom Greene County where David has the exclusive use of and to market and advertise the Affordable Storage mark.

14.     Michael has not argued for and has not submitted any evidence of actual monetary damages resulting from David's past use in Lubbock of the truck/SUV branded as set forth above or David's past use of a truck/SUV or other vehicles branded with the Affordable Storage combined with the word "Lubbock" in other locales where David has the exclusive or non-exclusive rights to use the Affordable Storage mark. Indeed, Michael expressly elected not to go to the expense in attempting to prove any such damages. As previously stated to the parties and their counsel with respect to the domain name Disputes, the Arbitrator concludes it is not appropriate to award any "penalty" or exemplary damages for any such breaches.  Accordingly, any claim by Michael for damages or monetary payment for David's past vehicle branding using the Affordable mark (or iterations thereof) in connection with the Lubbock market is denied with prejudice. Monetary relief for any future willful and non-trivial breaches (hopefully there will be none), will be left for another day and another arbitration proceeding. Michael's request for attorneys' fees in connection with the foregoing is addressed in Paragraphs 15 - 20, below.

9

### e) Attorneys' Fees and Costs

15. Michael seeks his attorneys' fees for David's breach of the Split Up Documents under Chapter 38 of the Texas Civil Practice and Remedies Code ("Chapter 38") and, at least to some degree, potentially under the Declaratory Judgments statute ("Chapter 37"). David raises issues with respect to awarding attorney fees based upon the following: A) language in Paragraph 32 of the Split Up Documents to the effect that each side will bear their own respective attorneys' fees; B) issues relating to whether there was proper and timely presentment in accordance with Chapter 38; C) whether attorneys' fees are available under Chapter 38 without a recovery of at least some actual damages; D) whether the attorneys' fees sought are reasonable; and E) whether Michael's attorneys' fees are properly segregated or allocated between contractual and non-contractual claims.

16. Preliminarily, the Arbitrator concludes that the provision in Paragraph 32 of the Split Up Documents to the effect that Michael and David "shall bear their own attorneys' fees and expenses..." related only to the then extant and past disputes and litigation being settled and resolved by the Split Up Documents and does not apply to breach of contract claims with respect to breaches of the Split Up Documents occurring in the future.

17. After considering all of the issues raised with respect to an award of attorneys' fees and expenses, the Arbitrator determines that it is fair, just, and proper that David and Michael each bear their respective **mediation fee** incurred in connection with the mediation of the Disputes addressed by this Award.

18. With respect to attorneys' fees in connection with these arbitration proceedings, much of the attorneys' fees incurred in connection with the preparation for the mediation also related to and were ultimately necessary for the presentation of the claims in the arbitration.

Accordingly, because of this substantial overlap, the Arbitrator will consider all of the attorneys' fees together without trying to differentiate attorneys' fees incurred in connection with the mediation rather than the arbitration.

19.     The Arbitrator reads the cases submitted by the parties with respect to attorneys' fees under Chapter 38 to require that a party obtain some relief, usually but not necessarily money damages, to be entitled to obtain a recovery of attorneys' fees under Chapter 38. Both parties prevailed on certain issues presented to the Arbitrator and, conversely, both parties did not prevail/lost on other issues. Specifically, Michael prevailed, at least to some degree, on two of his three claims. David prevailed on one of Michael's claims. While Michael did not seek or recover actual monetary damages with respect to the claims on which he prevailed, he did obtain declaratory and other relief with respect to the claims regarding the aplusstoragelubbock.com domain and the SUV/truck signage issues. On the other hand, David prevailed and obtained declaratory relief on Michael's claim involving the discountstoragelubbock.com domain.

20.     After considerable thought and review of the parties' submissions (including Michael's attorneys' fees statements) and considering: a) the nature and relative magnitude of the claims which were the subject of the Disputes; b) the nature and relative magnitude of the declaratory and other relief awarded; c) the requisites of Chapter 38; d) the latitude provided to the Arbitrator under Chapter 37 - the Declaratory Judgments statute - allowing the tribunal to award reasonable and necessary attorney's fees as "are equitable and just"; and e) the attorneys' fees reasonably attributable to the arbitration, the Arbitrator determines that it is fair, just, and proper that David pay to Michael the sum of $4,000.00 as reimbursement of a portion of Michael's reasonable attorneys' fees in connection with the arbitration proceedings regarding the Disputes. Those fees shall be paid to Michael's counsel by check or other money ready funds

11

(wire transfer or the like) within thirty (30) days of the date of this Award. The Arbitrator reserves jurisdiction to award additional reasonable and necessary attorney's fees and costs incurred by a party in the future because the other party did not in good faith materially and substantially comply with the terms of this Award. The Arbitrator anticipates any such claims would not be asserted lightly and will be reserved for only the most egregious and consequential acts or omissions in violation of this Award.

21.     The above determinations and declarations by the Arbitrator should provide sufficient clarity such that David and Michael understand their rights with respect to the matters addressed herein and will abide by those determinations.  Accordingly, the Arbitrator will not issue any relief in the nature of an injunction or otherwise at this time. However, the Arbitrator retains jurisdiction to issue appropriate further relief if necessary, to correct errors in the Award, to clarify this Award, and to otherwise enforce, effectuate and implement this Award but, as noted in the 2018 Arbitration Award, most earnestly hopes that he will not be required to do so.

22.     The parties have expended enough resources in connection with the Disputes. Accordingly, the Arbitrator will not further burden them with additional arbitration fees in connection with these arbitration proceedings and hearing, his deliberations, and the drafting and issuance of this Award.

23.     All relief sought but not awarded herein is denied.

**IT IS SO AWARDED AND ORDERED**

Christopher Nolland, Sole Arbitrator

DATED:  March 3, 2023

12

# United States of America

## United States Patent and Trademark Office

# AFF☺RDABLE
## STORAGE

**Reg. No. 5,404,615**

**Registered Feb. 20, 2018**

**Int. Cl.: 39**

**Service Mark**

**Principal Register**

MICHAEL R. POSTAR, INC. (TEXAS CORPORATION)
3110 Frankford
Lubbock, TEXAS 79407

CLASS 39: Providing self-storage facilities for others

FIRST USE 5-00-2000; IN COMMERCE 5-00-2000

The mark consists of the word "AFFORDABLE" in all capital letters with a smiley face representing the "O" in "AFFORDABLE". Beneath the word "AFFORDABLE" is the word "STORAGE" in all capital letters.

No claim is made to the exclusive right to use the following apart from the mark as shown: "AFFORDABLE STORAGE"

SER. NO. 87-288,843, FILED 01-04-2017

Director of the United States
Patent and Trademark Office

---

**EXHIBIT D**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 5,404,616**

**Registered Feb. 20, 2018**

**Int. Cl.: 39**

**Service Mark**

**Principal Register**

MICHAEL R. POSTAR, INC. (TEXAS CORPORATION)
3110 Frankford
Lubbock, TEXAS 79407

CLASS 39: Providing self-storage facilities for others

FIRST USE 1-00-2012; IN COMMERCE 1-00-2012

The mark consists of the word "AFFORDABLE" in all capital letters with a smiley face wearing a crown tilted to the right representing the "O" in "AFFORDABLE". Beneath the word "AFFORDABLE" is the word "STORAGE" in all capital letters.

No claim is made to the exclusive right to use the following apart from the mark as shown: "AFFORDABLE STORAGE"

SER. NO. 87-288,929, FILED 01-04-2017

Director of the United States
Patent and Trademark Office

EXHIBIT
E

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

## TRADEMARK LICENSE AGREEMENT

This Trademark License Agreement (this "Agreement") is made and entered into as of the _____ day of 8/26 , 2021 (the "Effective Date"), by and between Gargoyle Management Inc., a Texas corporation ("Licensor"), and , Gavin Hyland. ("Licensee") (hereinafter referred to individually as a "Party" and collectively as the "Parties").

### RECITALS

WHEREAS, Licensor is the owner of all rights, title, and interest in and to the trademarks listed in Exhibit A (the "Licensed Trademarks"); and

WHEREAS, Licensor wishes to grant to Licensee, and Licensee desires to obtain from Licensor, a license to use the Licensed Trademarks under the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and obligations contained herein, the Parties agree as follows:

### TERMS

**1.0    License**

1.1       Licensor hereby grants Licensee a non-exclusive, non-transferable, royalty free license ("License") to use the Licensed Trademarks.

1.2       The Licensed Trademarks and the goodwill associated therewith are and shall at all times remain the property of Licensor. All use of the Licensed Trademarks by Licensee and all goodwill generated by use of the Licensed Trademarks shall inure to the benefit of and be on behalf of Licensor.

1.3       Upon the request of Licensor, Licensee shall deliver to Licensor representative samples of any of its uses of the Licensed Trademarks as necessary to ensure that the use of the Licensed Trademarks by Licensee is permitted under the terms of this Agreement and that the integrity of the Licensed Trademarks is maintained.

**2.0    Term and Termination**

2.1       Except as otherwise provided herein, this Agreement and the provisions hereof shall be in full force and effect commencing on the Effective Date and extend in perpetuity.

2.3       Either Party may terminate this Agreement at any time upon sixty (60) days' prior written notice to the other Party.

2.4       Upon expiration or termination of this Agreement, all rights of Licensee under this Agreement shall immediately terminate, and Licensee shall immediately discontinue all use of the Licensed Trademarks.

DAVID007

**EXHIBIT F**

**3.0   Limitation of Liability/Indemnification**

      3.1   Licensee agrees to indemnify, defend, and hold Licensor harmless for and from any and all claims, liabilities, judgments, damages, and losses (including attorneys' fees and costs) arising out of from or based on any action by Licensee under this Agreement including, but not limited to, Licensee's use of the Licensed Trademarks.

**4.0   Governing Law**

      4.1   This Agreement shall be construed and interpreted in accordance with federal law and the laws of the State of Texas.

**5.0   Entire Agreement and Successors in Interest**

      5.1   This Agreement contains the entire understanding and agreement by and between the Parties, and revokes and supersedes any prior agreements between the Parties related to the matters set forth herein, and shall not be modified or amended except in writing signed by the Parties hereto and specifically referring to this Agreement.

      5.2   This Agreement shall be binding upon and inure to the benefit of the Parties, and their executors, administrators, personal representatives, heirs, successors, and assigns.

**6.0   Counterparts**

      6.1   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which, taken together, constitute one and the same agreement. A counterpart may be delivered to or by a Party by any means, including by fax or email.

      IN WITNESS WHEREOF, the representative of the Parties hereto, being authorized to sign on behalf of the entity for which they are signing and with full authority to legally bind such entity, have caused this Agreement to be executed on the Effective Date as set forth above.

GARGOYLE MANAGEMENT INC.

By:_____

Name:_David Postar_____

Title:__President_____

Gavin Hyland

By:_____

Name:_Gavin Hyland_____

Title:__President_____

## Exhibit A

| Mark | Jurisdiction | Services | Serial No. |
|---|---|---|---|
| Why Pay A Lot for Storage | Common Law | Providing self-storage facilities for others | 88-288,641 |
| Affordable Storage  | USA | Providing self-storage facilities for others | N/A |
| | | | |
| | | | |

# Postar v. Postar
# Arbitration

## <u>ORDER AND DECISION</u>
## <u>ON MOTION TO RECUSE</u>

1.     By email communications commencing on June 28, 2024 current counsel for David Postar ("David") raised concerns about the neutrality or the appearance of neutrality of the  undersigned Arbitrator (the "Arbitrator") based on prior professional interactions unrelated to the instant matter in which the Arbitrator previously acted as a mediator in various unrelated cases in which counsel for Michael Postar ("Michael") was involved as counsel for one or more of the parties in those mediations. Ultimately, on June 30, 2024, counsel for David objected to the undersigned serving as the Arbitrator and requested that the undersigned recuse himself from acting as the Arbitrator in this matter, primarily based on those prior unrelated mediations.

2.     The Arbitrator held a Zoom video conference with both counsel for David and counsel for Michael on July 1, 2024. The conference call was attended by Christopher Nolland, Arbitrator; Briana Cooper, counsel for David; and Fernando Bustos and Dierdre Trotter, counsel for Michael.

3.     Current counsel for Michael and prior counsel for David were aware that the Arbitrator had acted as a neutral mediator in a number of unrelated cases with both counsel for Michael and with prior counsel for David at the time this arbitration

1

<div style="border:1px solid black; display:inline-block; padding:4px;">

**EXHIBIT**

**G**

</div>

was initiated. To the best of the recollection of the Arbitrator there was no inquiry or discussion at that time of the precise number or the dates of the unrelated mediations in which the Arbitrator previously participated in with then counsel for the parties. At that time, counsel, of course, were aware of the matters in which the Arbitrator had acted as a mediator in unrelated cases in which their law firms were involved and, as noted, were generally aware that the Arbitrator had previously conducted a number of unrelated mediations with counsel for the opposing party.

4.  Current counsel for David has raised as grounds for recusal of the Arbitrator the number of prior unrelated mediations the Arbitrator has conducted in which counsel for Michael participated - approximately a total of nine mediations in unrelated matters in 2013, 2019, 2020, 2022, and 2023. The Arbitrator was also involved in various Postar related mediations or other proceedings between David and Michael starting in 2017 in which current counsel for Michael and prior counsel for David participated.

5.  David, through his current counsel (who replaced David's prior counsel in late March 2024), has recently raised concerns that the Arbitrator has developed a professional relationship with Michael's counsel as a result of serving as a mediator in unrelated cases in which Michael's counsel was involved. Implicitly (and perhaps somewhat explicitly) the concern expressed is that the relationship resulting from these unrelated mediations could place David and his current counsel at a disadvantage because Michael's counsel may have more credibility (and therefore more influence) with the Arbitrator than David's present counsel who has not mediated other unrelated cases with the Arbitrator. Presumably, this was not a

2

concern for David's prior counsel who had also mediated numerous unrelated matters in which the Arbitrator served as a mediator. David, through his counsel, has recently lodged a more formal objection to the Arbitrator continuing to adjudicate this matter based on the further information provided in response to a request by David's current counsel for more detailed information regarding the number and timeframe of the Arbitrator's prior unrelated mediations with Michael's counsel.

6.    While the Arbitrator cannot conclude with any certainty that the concerns raised by David through his counsel are an appropriate basis for recusal, under all of the circumstances presented here, the Arbitrator determines that the wisest course is to recuse himself as the Arbitrator in this matter and in any future disputes between Michael and David.

7.    First, from a philosophical and "life is too short" perspective, I simply do not desire to adjudicate a matter in which my neutrality is questioned. Even if not particularly objectively well founded or even wise, a party's subjective concerns and fears are often very much real to them. In this regard, I assign both good faith and a lack of any gamesmanship to David's recusal request.

8.    Second, recusal by the Arbitrator at this juncture is ultimately in the best interests of the parties. It will help ensure that any future arbitration award by another arbitrator or arbitration panel or a judgment of an appropriate court will not be challenged after the fact based on the issues raised in the recusal request. While any delay as a result of the recusal is unfortunate, that delay is likely better for the

parties than continuing with an arbitral process that may well be subject to later challenge.

**ACCORDINGLY**, the Arbitrator hereby recuses himself as an Arbitrator in connection with this proceeding and any future arbitration proceedings between David and Michael. The Arbitrator requests that counsel for the parties provide a copy of this Order to the Court in accordance with the Court's Order dated December 19, 2023.

**SO ORDERED**:

Dated: July 2, 2024

CHRISTOPHER NOLLAND, ARBITRATOR